## TSIVOGLOU v. UNITED STATES.

Circuit Court of Appeals, First Circuit.
April 1, 1929.

No. 2320.

Robert H. Holt, of Boston, Mass. (Robert H. Hopkins and Gaston, Snow, Saltonstall & Hunt, all of Boston, Mass., on the brief), for appellant.

J. Duke Smith, Sp. Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. This is a petition for the recovery of taxes amounting to $44,042.75, claimed to have been illegally collected from the petitioner with respect to his income for the year 1919. In the District Court judgment went against the petitioner. The only question is whether upon the facts the petitioner was entitled under the Revenue Act of 1918 (40 Stat. 1057) to deduct from his income for the year 1919 the sum of $149,700 as a loss which would have resulted in no taxable income for that year.

The petitioner had been engaged in the confectioners supply business in Boston since 1913. His tax return duly filed in the year 1919 showed taxable net income of $148,718.84, and a tax of $60,499.49 was assessed thereon, of which amount $44,042.75 was paid.

On December 27, 1919, the petitioner transferred all of his business assets to C. J. Tsivoglou, Inc., a Massachusetts corporation, which took over all of his assets and assumed all of his business liabilities. In exchange therefor Tsivoglou received the capital stock of the corporation, of an aggregate par value of $149,700, being all of its stock except 3 shares, issued to others as qualifying shares.

The assets transferred had been acquired by the petitioner since March 1, 1913, at a cost of $2,119,294.51 and the liabilities assumed by the corporation amounted to $1,969,594.51.

The market value of the assets on the day of the transfer was $1,953,796.82. The difference between the book value and the market value was largely due to shrinkage in the value of a large amount of foreign exchange in which the petitioner had invested.

The book value and the market value of the assets on December 27, 1919, the date of the transfer to the corporation, is shown by the following tabulation:

| Assets. | Book Value. | Market Value, Dec. 27, '19. | Difference. |
|---|---|---|---|
| Cash. | $  70,986.61 | $  70,986.61 | |
| Accounts receivable | 94,762.54 | 94,762.54 | |
| Merchandise on hand | 50,497.84 | 52,039.36 | $  1,541.52 |
| Merchandise in transit | 699,453.73 | 698,437.85 | 1,015.88 |
| Foreign exchange | 1,197,123.21 | 1,035,107.66 | 162,015.55 |
| Claims, freight | 4,007.78 | 0.00 | 4,007.78 |
| Furniture and fixtures | 2,000.00 | 2,000.00 | |
| Prepaid items | 462.80 | 462.80 | |
| | $2,119,294.51 | $1,953,796.82 | $165,497.69 |

The corporation assumed the liabilities of the business, said liabilities being as follows:

Accounts payable ........................ $1,270,140 78
Letters of credit payable................ 699,453 73

$1,969,594.51

The item under the heading "Foreign Exchange" represented foreign exchange in English pounds sterling and French francs purchased during 1919. The market value of the foreign exchange was $162,015.55 less than its cost, due to fluctuations in the market. The $149,700 par value of stock issued to the petitioner represented the difference between the cost or book value of his assets and the amount of his liabilities assumed by the corporation. The corporation continued in business until March 25, 1921, when it was adjudged a bankrupt. It was then definitely determined for the first time that the stock held by the petitioner was of no value.

On or about January 9, 1924, the petitioner filed a claim for refund of the entire amount of taxes paid by him on account of his 1919 income and for an abatement of the balance of the outstanding assessment remaining unpaid.

On or about March 2, 1925, the claim for refund and abatement was rejected by the Commissioner of Internal Revenue in its entirety. On January 12, 1927, the petition in this action was filed in the District Court and upon hearing the ruling of the Commissioner of Internal Revenue was sustained.

The petitioner contends that as a result of the transfer of his business to the corporation he sustained a loss deductible by reason of the provisions of the Revenue Act of 1918, which appear in sections 202 (b) and 214 (a). These provisions as far as applicable are as follows:

Section. 202(b): "When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any. * * * "

Section 214(a): "That in computing net income there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business. * * * "

■ The first contention of the petitioner is that he acquired on December 27, 1919, securities for which he paid $149,700 and which were definitely ascertained during that year to be worthless.

Regulation No. 45, art. 144, as revised is as follows:

"A person possessing securities such as stocks and bonds cannot deduct from gross income any loss claimed as a loss on account of shrinkage in value of such securities through fluctuations of the market or otherwise. * * * However, if the stock of a corporation becomes worthless its cost * * * may be deducted by the owners in the taxable year in which the stock becomes worthless provided a satisfactory showing of its worthlessness be made as in the case of bad debts."

By reference to the above tabulation it is apparent that the market value of the assets transferred to the corporation was less than the debts assumed by $15,795.69. It follows that the corporation was insolvent when formed, except as it might have a prospective value as a going concern. The stock did not become worthless during the year 1919, because during that period it had no value. It merely represented the property turned over to the corporation. That it had a prospective value is indicated by the fact that the petitioner went to the expense within 4 days of the close of the year to incorporate, and the fact that the corporation continued in business for 15 months. The future value depended upon future successful business operations and accretions to the assets of the corporation by a rise in value of the foreign exchange.

The fluctuations in the market of the English pound sterling and French francs were essential items of assets that might enhance the value of petitioner's corporate stock from stock of no value to stock of value. In other words, the stock of C. J. Tsivoglou, Inc., had potential value, which could not be determined on December 31, 1919. There was no gain nor loss to the petitioner by reason of transferring his property to the corporation ascertainable during the taxing period of 1919.

■ The petitioner further claims as a second ground of recovery that there was an exchange of property by which the petitioner received corporate stock that had a fair market value within the meaning of those words as used in section 202(b) and that such fair market value might properly be found to be zero.

As said by the court below, the market value of zero is a contradiction in terms. It is only another way of stating that the shares have no market value, and, having no market value, they have no cash equivalency. It follows that, having no cash equivalency, section 202(b) has no application. The law will

708

look at the substance of the transaction rather than its form. The petitioner neither gained nor lost by the transaction. The fact that he incorporated and turned over all of his business assets and liabilities to C. J. Tsivoglou, Inc., in no way enhances his rights to deduct losses from his taxable income. Holmes, Federal Taxes, 549 (1923 Ed.).

Unless he was entitled to make deductions independent of his corporate transaction, he cannot now claim a refund. While it appears that the value of his foreign exchange was less than its cost by $162,015.55, his purchase and holdings constituted an investment similar to any investment in stocks and bonds, and subject to the fluctuations of the market. A rise in the market might entirely wipe out the deficit in a single month. It is well settled that a person possessing securities such as stocks and bonds cannot deduct from gross income any loss on account of shrinkage in value of such securities through fluctuations of the market. Lewellyn v. Electric Reduction Co., 275 U. S. 243, 48 S. Ct. 63, 72 L. Ed. 262.

The judgment of the District Court is affirmed.