### INSURANCE & TITLE GUARANTEE CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Second Circuit.
December 16, 1929.

No. 9.

Hugh Satterlee, of New York City (A. S. Weill and Walter C. Blakely, both of Philadelphia, Pa., and Albert S. Lisenby, of Washington, D. C., of counsel), for petitioner.

Sewall Key, of Washington, D. C., and Norman D. Keller, of Pittsburgh, Pa. (C. M. Charest, Gen. Counsel, and P. S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and MACK, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ■ We think that the difference in value between the shares and the cost of the property conveyed was income within the meaning of the Sixteenth Amendment. It is, of course, true that every change of form in a security is not treated as new property, as was once for all held in Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, and the question of just how much is enough is indeed tangled. But we see no reason here to rely on the distinction between Marr v. U. S., 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079, and Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520, or to resort to U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180, Rockefeller v. U. S., 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186, or Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906. None of these cases concerned the substitution of shares in a company for chattels, choses in action, and other intangibles. Though courts at times ignore the corporate guise, and look to the control reserved through share ownership, neither the law nor commercial custom assimilates absolute title with share holding for purposes of sale and so of profit. Shares are separate salable units, not even aliquot interests in the company's property, for their owner has no more than a right against the company, at least before insolvency. Collectively they may allow the holder still to deal with the assets as he will, but he adopts the corporate form just for a new convenience in subdividing and disposing of his rights, and because law and commerce impute substance to the change in form. This divisible command of money so realized does not exist until he does so; he must sell the goods en bloc or piecemeal, practically a very different thing. If chattels received in

exchange would create a profit, shares will do as well, and no case has held the contrary. Tsivoglou v. U. S., 31 F.(2d) 706 (C. C. A. 1), went on the absence of any proof of value; so did Bourn v. McLaughlin (D. C.) 19 F.(2d) 148, and so, too, we read Heafey v. Allen (D. C.) 34 F.(2d) 941, and, if some of the language used may be thought to go further, we cannot accept it. We have no doubt that constitutionally there was income to tax.

The companies did, indeed, become "affiliated" after the transfer, by virtue of section 240 of the Revenue Act of 1918 (40 Stat. 1081), but not until the petitioner received the Gaffey shares. That section refers to returns covering income arising after the affiliation takes place; the profit at bar was realized at the instant of their receipt. The point was apparently not pressed before the board, but it is without substance.

■ It is more debatable whether the transaction was within the exemption of section 202(b) of the Revenue Act of 1918 (40 Stat. 1060). The language relied upon is as follows: "When in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, * * * the new stock or securities * * * shall be treated as taking the place of the stock, securities, or property exchanged." Article 1566 of the regulations of 1918 expressly assimilated the transaction at bar to a sale, and article 1567 defined "reorganization, merger or consolidation," so as to exclude it. The exemption as a whole seems to us to apply only to a case where the security holders of one company receive new securities in exchange for old. Perhaps it would protect the shareholders of the petitioner in this case from a tax upon the Gaffey shares, but it was not intended to touch the sale of the assets themselves. There could be no possible doubt as to this, were it not for the interjection of the word "property" at the end. Up to that point the section was plainly speaking of an exchange of shares for shares, or securities for securities. Whether that word meant more than to cover cases where the old shares were assessed as a condition of receiving the new, it is impossible certainly to know. At any rate it is not enough to change the entire pattern of the exemption, so as to cover such a transaction as this.

The petitioner argues that the amendment of 1921 (section 202 (c) (2), 42 Stat. 230), is an interpretation of what went before.

Perhaps so, but in that case it is conclusive against it, because, while it defines "reorganization" in such a way as to cover this case, it omits "property," and leaves no doubt that the notion was only to exempt security holders who received substituted securities. Subdivision (3) of section 202 (c) of the Revenue Act of 1921 (42 Stat. 230) may include the case at bar, but it is a new enactment and cannot throw any light upon the act of 1918. We are assisted in reaching the result we do by the fact that the Treasury has so construed the section, and because, being an exemption from taxation, we should bear against the taxpayer. Heiner v. Colonial Trust Co., 275 U. S. 232, 48 S. Ct. 65, 72 L. Ed. 256.

The most important question and the only one treated by the board is whether the shares of the Gaffey Company had a "market value." We have not the evidence, and the case must turn on the findings and opinion. The findings, properly speaking, say nothing about market value, except that Gaffey paid par for 125 shares of Gaffey stock. The petitioner says that this is contradicted by the tables of share holdings incorporated in the findings. The first of these professes to give the holdings on December 31, 1919; in it Gaffey is credited with 112 shares. The fourth table credits him with 56 shares after January 1, 1920, which is right, if his holdings were reduced one-half. He is, however, credited on the same date with 181 Gaffey shares, instead of 56, an increase of 125, which presumably were those bought at par, as stated in the finding. So far all is consistent. There is, however, a fourth table of holdings in the petitioner "after sale to J. F. Gaffey of 125 shares," which credits him with 237 shares at a time when the petitioner's capitalization was still 700. If this properly represents the holdings on January 1, 1920, Gaffey, after the reduction of shares to 350, should have held 118½ shares in each company, and in some way he acquired 62½ Gaffey shares, and surrendered in exchange a similar number of the petitioner's. If so, it is certainly possible that he bought 125 shares in the petitioner, with the understanding that it should be credited to him in a similar number of Gaffey shares, the equalization being effected by increasing the holdings of the others in the petitioner and reducing their Gaffey shares. It would not be incorrect to describe this as a purchase of Gaffey shares at par. In any case there is no certain inference to contradict the finding.

■ However, all of this is beside the point,

if there was an independent finding that the Gaffey shares had a market value, and such there was if we may look at the opinion. The petitioner insists that we may not, and this was decided in Kendrick Coal & Dock Co. v. Commissioner, 29 F.(2d) 559 (C. C. A. 8). That case arose under section 907 (b) of the Revenue Act of 1926 (44 Stat. 107), which required the Board to make "findings of fact and a decision" and gave it the option of adding "an opinion," if it thought advisable. The Revenue Act of 1928 went into effect on May 29, 1928 (45 Stat. 795), and the decision in the case at bar was made on June 7th of that year; being procedural, the amendment affected pending proceedings. As at that time prescribed, the duty of the board (U. S. C. title 26, § 1219 (b) [26 USCA § 1219(b)]), was "to include in its report * * * its findings of fact or opinion or memorandum opinion." The disjunctive implies that it may content itself with an opinion or with findings, and changes the requirement theretofore existing. If so, we see no reason why it should not make both, reserving disputed questions of fact to their discussion without anticipating its conclusion in findings. No doubt a conclusion must somewhere appear, as here it does, but to require that it shall be called a finding seems to us formal and idle. It is quite true that in Kendrick, etc., Co. v. Commissioner, supra, the court went further than the facts required and said that the amendment had not changed the law, but that was obiter, and does not persuade us. We think that the board here decided that the shares had a market value, and in the absence of the evidence that was enough.

Order affirmed.