## MOUNT v. COMMISSIONER OF INTERNAL REVENUE.

No. 132.

Circuit Court of Appeals, Second Circuit.

April 6, 1931.

Clarence J. Hand and Larkin, Rathbone & Perry, all of New York City (John W. Drye, Jr., Hersey Egginton, and John M. Perry, all of New York City, of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John H. McEvers, Sp. Asst. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Mc-Millan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The petitioner and his brother owned undivided half interests in real estate and personalty which they had acquired by inheritance from the estate of Susan Mount in 1917. In January, 1920, they caused to be organized a New York corporation, under the name of Clem Realty Company, with a capital stock of $1200, represented by twelve shares of stock. Forthwith they conveyed to it said real estate and possibly certain shares of bank stock, though there is much confusion in the record as to the stock. The Commissioner of Internal Revenue ruled that petitioner and his brother transferred the property to the corporation in exchange for its stock, resulting in a taxable gain under section 202 (b) of the Revenue Act of 1918 (40 Stat. 1060):

"(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any. * * *"

The Board of Tax Appeals confirmed the deficiency found by the Commissioner, and the correctness of this ruling is presented by this appeal.

It is contended by petitioner that the twelve shares of stock were paid for in cash and the conveyance of the property was a gift to the corporation. But the corporate minutes, upon which he relies, do not bear out this contention. The resolution of acceptance provides that "the corporation shall take the properties at the values at which said properties were appraised in inheritance tax proceedings in the Estate of Susan Mount," and further that, if upon appraisal of the various parcels of real estate there shall be an excess of value above that fixed by the inheritance tax proceedings, such excess "shall be construed as a gift to the corporation." There was no sense in speaking of the excess of value as a gift unless the rest of the value was a consideration for something the corporation gave in return. It gave in return its shares. It is true that it also agreed to indemnify the brothers against liabilities incurred or to be incurred in connection with another corporation known as Bronx Exposition, but such promise was backed by nothing except the assets obtained in exchange for its shares. The corporate minutes merely disclose a transparent attempt to conceal the real nature of the transaction, which was to convert the individual ownership of the brothers' property into ownership through a corporation whose shares should be equally divided between them. Confirmation, were it needed, is found in the petitioner's admission in the note attached to his income tax return, stating that the realty was conveyed in exchange for the "entire capital stock of the company." The Board was right in holding the transaction an exchange and not a gift.

The conveyance was made subject to existing mortgages, liens, and taxes. To provide a working capital, the Messrs. Mount agreed to supply $100,000, or such amount up to that sum "as shall be realized from the sale of stocks received by them by inheritance from Susan Mount upon liquidation of outstanding collateral loans, the corporation to have the right to take any or all of said securities up from time to time at the values at which they were appraised in inheritance tax proceedings," and any excess over such value to be received by the corporation as a gift. The brothers owned 538 shares of bank stock acquired by inheritance. It may be inferred that this stock was taken over by

552

the corporation at some time during the year 1920, though the record concerning it is most confused. It is impossible to tell when it was taken over, or what sum, if any, the corporation paid to release it from "outstanding collateral loans." The Commissioner's deficiency notice shows that he took 438 shares to have been transferred as of January 1, 1920, and apparently he valued it as of that date. The difficulties in sustaining a valuation as of that date are obvious, but we do not stop to consider this feature of the case, because even on the assumption that the bank stock may be treated exactly like the real estate, that is, that both were exchanged for the shares of the newly formed corporation, we think no taxable gain resulted.

Under the Revenue Act of 1921, § 202 (c) (3), 42 Stat. 230, such an exchange as this is explicitly excepted from taxation, and all subsequent acts express the same congressional intent; but the present case must be adjudged under the language of the 1918 act, already quoted. The exchange was taxable only if the shares had a "fair market value." This is the clear implication of the statute and is the construction adopted by the Regulations. Regulations 45, § 1563. The Board made no finding that the shares had a market value; on the contrary, it said that no evidence was offered as to saleability or market value. As so frequently happens in tax cases, the Commissioner relies upon the presumptive correctness of his determination. Wickwire v. Reinecke, 275 U. S. 101, 105, 48 S. Ct. 43, 72 L. Ed. 184; Austin Co. v. Commissioner, 35 F.(2d) 910, 912 (C. C. A. 6). So the question comes down to how far we are to press the taxpayer's burden of proof.

Here were six shares of stock out of a total of twelve held equally by two brothers, issued for a mixed lot of property composed of twenty-nine parcels of real estate incumbered by mortgages, liens, and taxes, and the equity in securities which had been pledged for collateral loans, the corporation itself also incumbered by an obligation to protect the brothers against indefinite obligations to creditors of Bronx Exposition. Such shares may have intrinsic value, but certainly the only reasonable inference is that they have no "fair market value." See O'Meara v. Commissioner, 34 F.(2d) 390, 395 (C. C. A. 10); Holmes Fed. Income Tax (6th Ed.) § 332. As is said in section 1583 of Regulations 45:

" * * * 'Market value' is the price at which a seller willing to sell at a fair price and a buyer willing to buy at a fair price, both having reasonable knowledge of the facts, will trade. Property received in exchange for other property has no 'fair market value' for the purpose of determining gain or loss resulting from such exchange when, owing to the condition of the market, there can be no reasonable expectation that the owner of the property, though wishing to sell and any person wishing to buy will agree upon a price at which to trade unless one or the other is under some peculiar compulsion."

There must be a limit beyond which the presumptive correctness of the Commissioner's determination may not be stretched in order to defeat a taxpayer. On the facts appearing in this record, the burden which the taxpayer carried of establishing that there was no fair market value for his shares was sustained. The number of shares, their equal division, and the character of the property for which they were issued, required an inference that there was no market for them, in the absence of evidence of saleability or market value. This conclusion is in accord with the uniform holding of the courts, so far as we are advised, under similar circumstances. O'Meara v. Commissioner, supra; Tsivoglou v. United States, 27 F.(2d) 564 (D. C. Mass.), affirmed 31 F.(2d) 706 (C. C. A. 1); Bourn v. McLaughlin, 19 F.(2d) 148 (D. C. N. D. Cal.); Heafey v. Allen, 34 F. (2d) 941 (D. C. Neb.). Cf. Schoenheit v. Lucas, 44 F.(2d) 476 (C. C. A. 4). Our own recent decision in Insurance & Title Guarantee Co. v. Commissioner, 36 F.(2d) 842, is not inconsistent with this result, for there the Board had made a finding of market value based on actual sales of the new shares.

The order of the Board of Tax Appeals is reversed.