HELVERING, Commissioner of Internal Revenue, v. WALBRIDGE.

No. 210.

Circuit Court of Appeals, Second Circuit.

May 14, 1934.

Frank J. Wideman, Asst. Atty. Gen., and John H. McEvers and Sewall Key, Sp. Assts. to Atty. Gen., for petitioner.

White & Case, of New York City (Al. C. Newlin, Walter S. Orr, and Russell D. Morrill, all of New York City, of counsel), for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is a petition of the Commissioner of Internal Revenue to review an order of the Board of Tax Appeals which reduced a deficiency in the respondent's income tax for the year 1928. The taxpayer, Walbridge, with three others, formed a partnership to trade in financial securities; he and two other partners contributed shares of stock, and the fourth gave cash. The firm sold some of the shares contributed by Walbridge at a price higher than that at which he had bought them, and higher than their value when he contributed them. In its income tax return the firm charged itself with the difference between the sale price of the shares and the cost at which it had accepted them, and concededly Walbridge was liable for an income tax upon his proportion of that profit. But the Commissioner further charged his income with the difference between the price at which the shares had been taken by the firm and their cost to him; and it is the tax on this gain that is now at issue. Walbridge maintains that he is not taxable upon it until the firm is dissolved, at which time it will come in as a profit or loss, according as his liquidating dividend is greater or less than the original cost of the shares to him. The Board so held and the Commissioner appealed.

Under the Act of 1928, as earlier, partnerships were obliged to make returns (section 189, 26 USCA § 2189), and their income was computed as that of an individual (section 183, 26 USCA § 2183), but the tax was imposed upon the partners (section 182 (a), 26 USCA § 2182 (a), the firm itself not being taxable (section 181, 26 USCA § 2181). Ever since the Act of 1918 the Regulations had provided that only upon dissolution of the firm did the partner individually "realize" any gain or loss on firm transactions, and at that time his gain was the difference between his liquidating dividend and the original cost to him of his contribution. Article 1570, Regulations 45, Act of 1918; article 1570, Regulations 62, Act of 1921; article 1603, Regulations 65, Act of 1924; article 1603, Regulations 69, Act of 1926; article 604, Regulations 74, Act of 1928. Indeed if the liquidating dividend was in kind, no gain was "realized" until the property distributed was sold, a provision of doubtful validity except perhaps in cases where the dividend did not itself have any "fair market value." In the face of such long continued departmental interpretation we should be slow to construe the statute otherwise; indeed we would not do so at all unless the statute flatly required it. It does not. The relevant section is section 111 (c) of 1928, 26 USCA § 2111 (c), which provides that "the amount realized * * * shall be the sum of any money received plus the fair market value of the property * * * received"; the critical words are "fair market value." The section has stood in substantially this form since 1918, with the exception of the Act of 1921, § 202 (c), 42 Stat. 230, where it read, "readily realizable market value"; a more comprehensive formula, for one may at times "readily realize" on goods which have no true market, "fair" or "unfair." Article 561 of Regulations 74, under the Act of 1928, in implementation of this section declares that although "fair market value" is a question of fact, "only in rare and extraordinary cases does property have no fair market value." In other connections the phrase has usually been defined as the price at which "a willing buyer" and "a willing seller" would exchange. Article 206, Regulations 45; article 201 (b), Regulations 62; article 221 (b), Regulations 74. Article 1563 of Regulations 45 expands the same notion without substantially varying this definition. The gloss we have quoted we cannot accept; "fair market value" is not nearly so universal a phenomenon as to justify such a comment, and the implication is misleading. Perhaps there need not be a "market" to establish a "market value," but there must be some assurance that the value is what a "market" would establish; and a "market" itself presupposes enough competition between buyers and sellers to prevent the exigencies of an individual from being exploited. It may well imply that the goods have several possible buyers, so that a necessitous seller shall not be confined to one; and that there are several possible sellers of the same goods or their substantial equivalent, so that a hard-pressed buyer shall not have to accept the first offer. "Willing" adds nothing, for, if the trade goes through at all, both must be willing, and the degree of their reluctance is not a serviceable measure. In the case at bar Walbridge's share in this firm, engaged in marketing securities, was not "marketable"; the assumption is wholly unfounded that it was worth the value of his contribution. Under the Partnership Law of New York (Consol. Laws N. Y. c. 39) § 53,

a sale of a partner's interest no longer disrupts the firm; it does not transfer any interest in the firm assets, but only the assignee's rights upon an accounting and during the continuance of the firm. That goes along for its prescribed term and the eventual liquidating dividend cannot possibly be learned in advance. The decisions have so far attempted no definition of the phrase, proceeding rather by exclusion; we agree that it does not require a price determined in a conventional market like a stock or produce exchange; there are other "market" prices, recognized and accepted as such in trade. But all the cases have required some more palpable measure than any available here, which can be no more than an opinion as to the value of a unique right of action for which there were no known buyers, nor any but an imaginary demand. Bedell v. Commissioner, 30 F.(2d) 622 (C. C. A. 2); O'Meara v. Commissioner, 34 F.(2d) 390 (C. C. A. 10); Logan v. Commissioner, 42 F. (2d) 193 (C. C. A. 2), affirmed sub nom. Burnet v. Logan, 283 U. S. 404, 413, 51 S. Ct. 550, 75 L. Ed. 1143; Schoenheit v. Lucas, 44 F.(2d) 476 (C. C. A. 4); Mount v. Commissioner, 48 F.(2d) 550 (C. C. A. 2). So far therefore as the Commissioner proceeded on the theory that the value of Walbridge's share in the firm could be made the minuend in an equation determining a "recognizable gain," he was wrong.

The Commissioner's second argument treats the partnership pluralistically, as the common law did before equity intervened. His theory is that when a firm sells property contributed by a partner, it is a sale of the partner's property, and the gain may properly be divided into two parts; that which accrued before the contribution, and which can be taxed against him, and that arising thereafter, which must be taxed against the firm. Such a view ignores even the bare common-law outlines of a partnership—joint ownership and joint obligation—to say nothing of the scaffolding reared by equity to support the concept of the firm as an entity. By his transfer the partner ceases to be sole owner of what he contributes and thereafter holds jointly; his consideration is his own share in the contributions of the other partners. When the firm sells the entire interest in the contributed property the contributing partner sells only his reserved proportion, and the other partners sell their acquired proportions. If we kept very literally to the common-law view, we might say that the partner had "realized" a "gain" based upon the difference between his proportion of the selling price and the same proportion of his original cost, but that is as far as we could go. The other partners would have "realized" the difference between their proportion of the selling price and the same proportion of their cost, whatever that was; conceivably it might be either the original cost of the property to the contributing partner, in analogy with the rule as to gifts, or its value at the time of contribution. But in neither case could that gain be assessed against the partner who contributed the property, for he had no interest whatever in this part of the profit. He had altogether parted with the property except that proportion which he retained as partner; he had got for it his interest in the contribution of the other partners, and any gain to him must be measured in terms of that exchange. Moreover, he may not be taxed even upon the profit realized on that proportion of the property of which at common-law he remained owner. It was firm assets, he could not withdraw it; he had no effective power over it, and therefore no interest in it, save as it might figure in "his share of the profits and surplus." Section 52, N. Y. Partnership Law (Consol. Laws N. Y. c. 39). It is true that the common-law even after equity was through, had not conceived the firm as a juristic person. Francis v. McNeal, 228 U. S. 695, 33 S. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706; Harris v. Commissioner, 39 F.(2d) 546 (C. C. A. 2). But for practical purposes the distribution was not very different and the legal interest of a partner as joint owner has long since lost most of its legal incidents. United States v. Kauffman, 267 U. S. 408, 45 S. Ct. 322, 69 L. Ed. 685. Thus it appears to us that the regulation provided the proper way to deal with a partner's rights, and that a necessary corollary from it is that no gain is "realized" by a separate partner when the firm sells partnership property.

Order affirmed.