**D. D. OIL CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11035.

Circuit Court of Appeals, Fifth Circuit.

Feb. 24, 1945.

Dan Moody, of Austin, Tex., for petitioner.

John F. Costelloe, Sewall Key, and A. F. Prescott, Sp. Assts. to Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bur. of Int. Rev., both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The facts and contentions are succinctly stated in the opinion of the Tax Court as follows (3 T.C. 5):

"In 1939 petitioner sold oil and gas leases to Davis & Co. in consideration of Davis & Co.'s promise to pay petitioner's indebtedness of $60,000 to the Transwestern Oil Co. and to secure the discharge of petitioner's indebtedness of $200,000 to Kellogg. The Transwestern debt of $60,000 was paid by Davis in cash, and there is no dispute about the treatment of that payment as a realization of income by petitioner. Davis also paid Kellogg $100,000 in cash on account of petitioner's debt, and that, too, is recognized as a realization of income by petitioner. The remaining $100,000 of petitioner's indebtedness to Kellogg was covered by a series of promissory notes given in 1939 by Davis & Co. to Kellogg. Of these notes, $33,332 were paid by Davis & Co. when due in 1939, and that amount also is recognized as taxable income of the petitioner in that year.

"The remaining $66,668 of notes which were not due and were not paid by Davis & Co. in 1939 are the subject of the controversy. The petitioner assails the Commissioner's determination that this amount is included in its 1939 income.

"The receipt of property in consideration for a sale is regarded as the receipt of cash to the extent of the value of the property (§ 111(b) Revenue Act of 1938, [26 U.S. C.A. Int.Rev.Code, § 111(b)]; Whitlow v. Commissioner, 8 Cir., 82 F.2d 569; Helvering v. Bruun, 309 U.S. 461 [60 S.Ct. 631, 84 L.Ed. 864]; Musselman Hub-Brake Co. v. Commissioner, 6 Cir., 139 F.2d 65), and the gain therein is income. So it would be clear, if the Davis notes had come to petitioner directly instead of going to Kellogg on account of petitioner's debt to Kellogg, that petitioner would have been taxable upon the gain when the notes were received; clearer even than if the purchaser had assumed a mortgage. Cf. Brons Hotels, Inc., [v. Com'r], 34 B.T.A. 376. But the notes did not come to petitioner directly, and its position is that they may not be regarded as constructively received

by it in 1939, since petitioner's obligation was not discharged but persisted; and further that, even if petitioner should be charged with constructive receipt of the notes, still there is no income, since the notes were without market value and therefore were not the means of a realization of income.

"It is true that petitioner's obligation was not discharged when Kellogg took the Davis notes. The notes were expressly said in the agreement to be 'collateral' to the petitioner's obligation. But the legal fiction of constructive receipt treats the receipt by Kellogg as the receipt by petitioner; and clearly the receipt by petitioner directly of the Davis notes in consideration for the sale of the oil and gas leases would be none the less income, even though petitioner's obligation to Kellogg continued. The realization of income from the sale is not found merely in Davis' promise to pay petitioner's debt to Kellogg but in the constructive receipt by petitioner of property consisting of the Davis notes. This property is income to the extent of its value. Whitlow v. Commissioner, supra; Helvering v. Bruun, supra.

"The face value of the notes was $66,668. They were given under the agreement, and the remaining $33,332 of the $100,000 notes were paid when due in 1939. The $66,668 of notes were paid according to their terms within the following year, at or before their maturity. But petitioner says that in 1939 they were without market value, largely because they were secured by the contract and there was no assurance that the contract would be fulfilled or would be fruitful. This, however, is not enough to indicate that the promissory notes in 1939 were without value. The inference is rather the other way, that they had full value subject to the possibility of a rescission of the contract upon the happening of a condition subsequent. In 1939, there was no reason to treat this as probable, and very soon it turned out not to be a fact. We think the evidence does not establish that the notes were worth less than their face value. The Commissioner's determination that they were worth $66,668 is sustained."

▇▇▇ We agree with the Tax Court's statement of facts but with dissenting Judge Leech's conclusions of law.[1]

---

[1] Throughout this opinion Davis & Company will be referred to as "Davis", M. W. Kellogg Company as "Kellogg", D. D. Oil Company, Inc., Dee Davenport, and O. H. Davenport, as "taxpayer" or "petitioner".

He pointed out: (1) That the eight notes remaining undue and unpaid in 1939 were given as collateral security to the taxpayer's prior obligation to Kellogg. (2) That the doctrine of realization of taxable income by constructive receipt is to be sparingly applied. (3) That income which has not been actually received during the taxable year, nor its right to receipt in such year definitely fixed, should be allocated only to the year in which it was received or in which its right to receipt became fixed and liquidated. (4) That these notes being received by Kellogg as collateral and not in payment of the taxpayer's indebtedness could not have been used by sale or otherwise (prior to default in payment on maturity) in the reduction or payment of the taxpayer's debt. (5) That the notes executed by Davis were subject to the cancellation clause in the contract between Davis and taxpayer whereby Davis had a right to abandon and cancel the contract after drilling the first well, and to recover, through retained royalties, any amounts advanced until Davis was reimbursed in full, with interest. (6) The notes were all payable to Kellogg. (7) They could not have been sold by the taxpayer. (8) They could not have been used by the taxpayer in any manner other than the way in which they were used, to-wit, as collateral security to taxpayer's debt to Kellogg.

Moreover, it clearly appears that the taxpayer never had either (1) the title, (2) the possession, or (3) the use (prior to payment) of the Davis notes. It could not sell them because it could not pass title nor deliver possession, nor could it borrow on them. The execution of the notes did not release any of taxpayer's holdings from the lien securing its indebtedness. These notes did not result in a reduction of taxpayer's indebtedness until payment, whereupon they were canceled, prior to which neither they nor their proceeds were ever delivered to taxpayer. The notes were not received by Kellogg for the use of taxpayer but for the additional security of Kellogg.

In view of these things and the fact that although Davis had agreed to drill ten wells, it had the option in its contract to cancel and abandon the contract after drilling the first one and in such event to retain a percentage of the royalties until fully reimbursed for all outlays, it would seem the holding of the Tax Court that these notes, which admittedly were neither due nor paid until after 1939, constituted a constructive receipt of income to a taxpayer who was on the cash receipt basis, indicates a failure to distinguish between fact and fallacy. If at any time before payment of the notes Davis had decided to cancel the contract it could have done so and could have thereby converted its obligation to pay out money for taxpayer into an obligation of the taxpayer to pay out money to it, as well as to Kellogg on the balance due him, if any.

■ The contracts, notes, assignments, and trust deeds must be construed in pari materia, in the light of which the notes in question would be non-negotiable by the taxpayer under the Uniform Negotiable Instruments Law and, therefore, without market value to him.[2]

Davis' contract with the taxpayer, of which the notes were a material part, was not only conditional but it required the drilling of ten wells and the doing of a number of acts in addition to payment of money.

■ The Sixteenth Amendment authorized the taxing of income but not the taxing of the intangible and non-negotiable contingencies of a taxpayer on the cash receipt basis, that may in a later year result in income.

The holding of the Tax Court is reversed.

HOLMES, Circuit Judge (dissenting).

I think the holding of the Tax Court that the installment notes constituted income of the taxpayer in 1939 is in accord with well-settled principles of tax law and should be upheld.

These notes, in form, were interest-bearing unconditional promises to pay, and were negotiable. They were executed in payment of the purchase price of a leasehold interest from the taxpayer, and were delivered to a creditor of the taxpayer at the instance of the taxpayer for the purpose of paying the debt of the taxpayer. The receipt of such property is the equivalent of the receipt of cash on the date of delivery to the extent of the fair market val-

---

[2] "An instrument payable upon a contingency is not negotiable and the happening of the event does not cure the defect.

"An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable."

ue of the property,[1] and the delivery to a third person at the request and for the benefit of the taxpayer is regarded, for tax purposes, as delivery to the taxpayer.[2] Not a single decision is cited, or can be, holding contrary to these principles; but it is said that, since the notes were accepted "as collateral to" the obligation of the taxpayer, and since the debt of the taxpayer was not cancelled when the notes were received, the taxpayer received no actual benefit until the notes were paid. Let us examine this argument.

Except in legal or business parlance, the word "collateral" means subsidiary, indirect, or complementary. In legal terminology, when used in connection with a deposit of promissory notes, the word ordinarily means something of value pledged to guarantee performance of an obligation.[3] These contracts all recited that the notes were delivered or accepted "as collateral to the obligation," not as "collateral to secure the payment of the obligation," and other recitations of the instruments and the acts of the parties make it clear that the notes were not delivered as collateral security in the legal sense. Davis executed and delivered the notes pursuant to its contractual agreement to induce Kellogg to accept the primary obligation of Davis to pay the balance remaining of $100,000, which balance should be paid by Davis to Kellogg in twelve equal monthly installments. The maturity date of the taxpayer's debt then was extended to the maturity date of the last installment note, and, most enlightening of all, without any further negotiations the installment notes were paid as they matured and credited to the debt of the taxpayer. Plainly this was not the liquidation of collateral security to defray an overdue and unpaid debt, for the primary debt was not overdue. The notes were given in payment of the debt, not merely as collateral to secure it.

The Tax Court found, upon ample evidence that the face value of the notes was their fair market value in 1939. This being true, the payee had in its hands in 1939 the equivalent of cash in an amount sufficient to discharge in full the indebtedness of the taxpayer, and it was legally bound to use the notes for that purpose. In these circumstances, the amount of the notes was taxable income to the petitioner in 1939.[4] Therefore, I dissent.

---

[1] Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864; Whitlow v. Commissioner, 8 Cir., 82 F.2d 569; Musselman Hub-Brake Co. v. Commissioner, 6 Cir., 139 F.2d 65.

[2] United States v. Boston & M. R. Co., 279 U.S. 732, 49 S.Ct 505, 73 L.Ed. 929; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241,

74 L.Ed. 731; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655.

[3] See City Investment & Loan Co. v. Wichita Hardware Co., Tex.Civ.App., 57 S. W.2d 222, 223; Words and Phrases, Perm. Ed., Vol. 7, pages 571 et seq.

[4] Cases cited in notes 1 and 2, supra.