**PERRY et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 13126.

Circuit Court of Appeals, Eighth Circuit.

Dec. 13, 1945.

James D. Dye, of Wichita, Kan. (Ellis D. Bever, of Wichita, Kan., on the brief), for petitioners.

Harold D. Cohen, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, THOMAS and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States redetermining an income tax deficiency of the taxpayers for the year 1937. The petitioners are husband and wife residing at Kansas City, Missouri. They kept their books and filed their income tax returns on a cash basis.

The question in issue before the Tax Court was whether deferred payments received by J. W. Perry in 1937 under a contract with Canadian Telephones & Supplies, Ltd., constituted gain realized in that year under the provisions of § 111 of the Revenue Act of 1936, 49 Stat. 1648 et seq., 26 U.S.C.A. Internal Revenue Acts, page 813, at page 854, or whether such payments constitute income for the year 1936 when the contract was executed.

The pertinent provisions of the 1936 statute read:

"Sec. 111. Determination of Amount of, and Recognition of, Gain or Loss.

"(a) Computation of gain or loss. The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain. * * *

"(b) Amount realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

Decision of the issue before the Tax Court turned upon the question whether the contract with the Canadian corporation, dated May 5, 1936, for deferred payments, had a "fair market value" when executed in 1936 within the meaning of § 111(b).

The question presented to this court for determination on review is whether the decision of the Tax Court that the contract of 1936 "did not have a fair market value" is "in accordance with law." 26 U.S.C.A. Int.Rev.Code, § 1141(c) (1). The Tax Court, under the statute is the "basic fact-finding and inference-making body." Boehm v. Commissioner, 66 S.Ct. 120, 124, 90 L.Ed. ——. If its decision is in accordance with law, the different inferences and conclusions that might fairly be drawn from the undisputed facts are immaterial. Commissioner v. Scottish American Inv. Co., 323 U.S. 119, 65 S.Ct. 169.

The substantial facts giving rise to the controversy are not in dispute. Most of them were stipulated at the hearing before the Tax Court. On May 5, 1936, the petitioner, J. W. Perry, was the owner of (a) Notes of Union Investment and Loan Company on which there was a balance due of $47,500; (b) A claim for $20,000 for services rendered against Community Telephone Company of Kansas City, Missouri, and (c) An agreement dated April 6, 1936, between J. W. Perry and R. B. Jones & Sons, Inc., insurance agents of Kansas City, Missouri.

On that day, May 5, 1936, J. W. Perry entered into the contract which is the basis of this controversy with Canadian Telephones & Supplies Limited of Toronto, Canada (hereinafter called Canadian), by the terms of which he assigned to Canadian the three properties described in the preceding paragraph for an agreed consideration of $147,500 payable $60,000 in cash upon execution of the contract and the balance in monthly installments of $3,000 each beginning June 1, 1936, with interest at the rate of 5% per annum on the deferred installments, payable quarterly, with the privilege of liquidating the unpaid balance in amounts greater than $3,000 a month.

The contract provided further:

"It is agreed between the parties hereto that an executed copy of this agreement shall be deposited with and held in the custody of Canadian Telephones & Supplies Limited, and that as collateral thereto it shall hold the following described items, which are, for the purpose of this agreement, valued as follows:

|  | Valued at |
|---|---|
| "Notes of Union Investment & Loan Co. par value $47,500... | $ 47,500 |
| "Claim against Community Telephone Co.—$20,000 ......... | 20,000 |
| "Contract dated April 6, 1936 between R. B. Jones & Sons, Inc., and J. W. Perry ............ | 80,000 |
|  | $147,500 |

"The said $60,000 paid upon the signing of this agreement shall be deemed to be payment in full for the notes of Union Investment and Loan Company of $47,500 and the said notes are released from this agreement to Canadian Telephones & Supplies Limited as its property. The balance of said $60,000 shall be applied on payment of the claim against Community Telephone Company. The monthly payments of $3,000 per month, as hereinabove provided, shall be first applied in payment of the claim against Community Telephone Company until a total of $67,500 has been under this contract paid, whereupon the claim against Community Telephone Company shall be released from this agreement to Canadian Telephones & Supplies Limited, as its property.

"Upon the payment of the amount of $147,500 provided for in this contract, this contract shall terminate and the contract between R. B. Jones & Sons Inc. and J. W. Perry shall be released from this agreement and delivered up to Canadian Telephones & Supplies Limited."

On October 14, 1936, Canadian transferred its rights and interests under the contract to Kroy Investment Company, Limited, of Canada, and Kroy assumed the liabilities and obligations of Canadian thereunder. On the same day Perry accepted Kroy as successor under the contract and released Canadian "of all its liabilities and obligations under said contract dated May 5, 1936." Paragraph "4" of the contract of October 14, 1936, by the terms of which Perry accepted Kroy as obligor in place of Canadian provides: "It is agreed between the parties hereto that Kroy is to have all the same rights, options and privileges and is to be subject to all the same limitations and restrictions, as said Canadian Telephones & Supplies, Limited, under said contract dated May 5, 1936, by and between said Canadian Telephones & Supplies, Limited, and said J. W. Perry."

At that time $72,500 of the purchase price remained unpaid. As of December 31, 1936, the entire unpaid balance on the contract was $63,500, all of which was paid by Kroy on or before April 12, 1937.

It will be observed that at the end of 1936 the purchase price of the notes of Union Investment and Loan Company and the claim against Community Telephone Company had been paid in full and these two items had been released, pursuant to the terms of the contract, to Canadian or to Kroy Investment Company as their property. At that time $16,500 had also been paid on the purchase price of the R. B. Jones & Sons, Inc., contract, leaving the total unpaid balance of $63,500 applicable to the purchase price of that contract. Since the income tax deficiency is based upon the payment of this $63,500 balance in 1937, we are not particularly concerned here with the history of the notes of the Union Investment and Loan Company and the claim against the Community Telephone Company.

The transactions connected with and the subject matter of the R. B. Jones & Sons, Inc., contract were considered by the Tax Court to have a bearing upon the issue of fair market value of the contract of May 5, 1936.

Canadian and Kroy, both of which are Canadian corporations, are subsidiaries of Theodore Gary and Company, a holding

company, with numerous affiliated and subsidiary corporations, organized under the laws of Missouri. On March 9, 1934, J. W. Perry entered into a contract with Theodore Gary and Company, hereinafter called Gary, by one of the terms of which Gary agreed, at the request of Perry, to place with R. B. Jones & Sons, Inc., insurance covering the requirements of its subsidiaries on which the gross premiums at regular tariff rates would amount to at least $680,000 during a five-year period, failing which Gary agreed to pay Perry as liquidated damages an amount equal to 30% of the deficiency in such premiums, and Perry agreed to procure for Gary a 5% reduction from the regular tariff rates.

On April 6, 1936, J. W. Perry entered into the contract with R. B. Jones & Sons, Inc., which is the subject of assignment to Canadian under the contract of May 5, 1936. By the terms of the April 6th contract R. B. Jones & Sons, Inc., agreed that if Perry caused to be placed with it for the Gary Company and its subsidiaries and affiliated companies insurance on which the gross premiums at regular rates, less cancellations, would amount to $770,000 Jones & Sons would secure reductions thereon from the regular tariff rates in the amount of $147,500. The contract further provided that Perry would reimburse Jones & Sons for all amounts paid to local agents as commissions; and that Perry might assign the contract with the consent of Jones & Sons provided the assignee would carry out all the terms of the agreement imposed upon Perry. On April 7, 1936, confirmation of an oral understanding "given at the time of the agreement dated April 6, 1936", was executed, whereby Cliff C. Jones and J. W. Perry jointly and severally agreed that in consideration of the contract of April 6th they would protect and save harmless Jones & Sons from two-thirds of any loss, damage or expense incurred by virtue of said contract or of anything done in pursuance thereof.

The taxpayers contended that the question of fair market value is one of fact and that the promise in the contract of May 5, 1936, to make future payments aggregating $87,500 in installments of $3,000 a month had at the time of the execution of the contract a fair market value equal to the amount of the unpaid installments. To support their contentions they introduced in evidence the financial statements of Canadian and of Canadian (B.C.) and

the testimony of three value witnesses. These witnesses testified that the contract after the $60,000 payment had been made had a fair market value of $87,500. On cross-examination J. W. Perry explained that by fair market value he meant that the contract was worth that amount of money to him. Arthur B. Eisenhower and George C. Kopp, bankers of Kansas City, Missouri, basing their opinions upon the financial statements of Canadian and Canadian (B.C.) and on the market for securities, testified that the contract had a fair market value at its face. Kopp said that he based his opinion on the evidence presented which convinced him the payments would be collected, but that while he would have no reluctance in recommending the investment to a client he would not advance any money on the security of the balance sheets of the Canadian companies without an investigation. There was no evidence of any sales of similar contracts or of any offers for the particular contract.

The Tax Court, viewing the evidence as a whole, found (1) that considering the question of fair market value always as one of fact the taxpayers had failed to show fair market value in the agreement of May 5, 1936, to pay $147,500 and (2) that the contract did not evidence when executed in 1936 a closed transaction for tax purposes in no degree executory and with only a mere unconditional promise to pay a specific sum remaining.

In reference to the first of these findings the Tax Court said that the total effect of the evidence shows only that the contract had intrinsic value and that the evidence is not convincing that it had fair market value. "The very fact", said the Court, "that the statute uses 'fair market value' instead of mere 'value', indicates intent not to permit the inclusion in income of any contract merely because of intrinsic value."

In reference to the second finding that the contract did not represent a closed transaction in 1936 for tax purposes the Court made several observations. It pointed out that title to the notes, to the claim against the Community Telephone Company and to the Jones contract, did not pass to the assignee until the agreed value of each of these items respectively had been paid in full. Title to each item remained in Perry as "collateral" security at least for the purchase price. Although the assignee itself held the Jones

contract in escrow until April 12, 1937, the contract of May 5, 1936, shows clearly, said the Court, that Perry did not intend, and was not obliged, to deliver the Jones contract until payments were completed.

Again, in a separate assignment of the Jones contract made as a part of the transaction of May 5, 1936, the assignee, Canadian, agrees to carry out and perform any and all things to be performed by Perry under the Jones contract. In that contract Perry agreed to reimburse Jones for all amounts paid to local agents as commissions. In case Canadian had failed to compensate Jones for such commissions Perry would have been liable for them. In any event Canadian did not know at the time the contract was made what the total cost of the Jones contract would be.

Further, the Tax Court observes that the contract of October 14, 1936, between Perry and Kroy Investment Company, to which Canadian assigned the contract of May 5, 1936, recognizes mutual rights and liabilities under the latter contract inconsistent with a mere unconditional obligation to pay a specific sum; for therein it is recited that "Kroy is to have all the same rights, options and privileges and is to be subject to all the same limitations and restrictions" as Canadian in the contract of May 5, 1936. Also, Perry agrees to deliver to Canadian "a release of all its liabilities and obligations under the contract dated May 5, 1936."

We are unable to reconcile the authorities cited by counsel or found by us upon the question determined by the Tax Court adversely to the contentions of the taxpayers. The courts do not agree upon any simple universal rule to test the existence or not of the fair market value of a contract for deferred payments under § 111(b) nor for determining when a transaction is closed for tax purposes. The decisions of the Board of Tax Appeals and of the Tax Court as well as those of the federal courts are not consistent upon the point.

Under the statute property having a satisfactory ascertainable value, notes or bonds representing definite and fixed obligations, and securities marketable in the usual channels of trade when received in consideration for a sale of property are generally regarded, to the extent of the value of such items, as the receipt of cash and the transaction is considered closed for tax purposes in the year in which the sale is consummated. Whitlow v. Commissioner, 8 Cir., 82 F.2d 569; D. D. Oil Co. v. Commissioner, 5 Cir., 147 F.2d 936, and cases cited. On the other hand, if the property or thing received other than money has no fair market value or if the sale is not a definite and closed transaction gain is not regarded as realized by the taxpayer until the year in which payment in money is received. Bedell v. Commissioner, 2 Cir., 30 F.2d 622; O'Meara v. Commissioner, 10 Cir., 34 F.2d 390; Logan v. Commissioner, 2 Cir., 42 F.2d 193, affirmed sub nomine Burnet v. Logan, 283 U.S. 404, 413, 51 S.Ct. 550, 75 L.Ed. 1143; Schoenheit v. Lucas, 4 Cir., 44 F.2d 476; Mount v. Commissioner, 2 Cir., 48 F.2d 550; Helvering v. Walbridge, 2 Cir., 70 F.2d 683, 685; Commissioner v. Segall, 6 Cir., 114 F.2d 706; Cassatt v. Commissioner, 3 Cir., 137 F.2d 745.

In the case of Bedell v. Commissioner, supra, Bedell advanced $50,000 to one Cohen to apply on the purchase price of real estate. His contract with Cohen was that he should receive one-half the profits on a resale of the property. A contract for the resale of the property at a substantial profit was closed on December 12, 1919, $75,000 of the purchase price being deposited in escrow to await the closing on February 29, 1920. The contract was actually closed on February 2, 1920, when Bedell's advance was returned to him and he was paid one-half the profits in accordance with the agreement. The question was whether Bedell realized the profits for income tax purposes in 1919 when the contract was entered into or in 1920 when payment was received. In holding that the profit was realized in 1920 when paid Judge Learned Hand said [30 F.2d 624]:

"* * * it is true that an obligation, even a conditional obligation, is in some sense property * * * nevertheless payment is made in exchange for title, and will never be made if it is not conveyed. To speak of the profit as resulting because its amount can be presently ascertained, though performance remains uncertain, seems to us a perversion of language. * * *

"It is absurd to speak of a promise to pay a sum in the future as having a 'market value', fair or unfair. * * * Even if we could treat the case as an exchange of property, the profit would be

realized only when the promise was performed."

As to the market value of a contract to pay in the future, the court said in Helvering v. Walbridge, supra [70 F.2d 685], that evidence of market value of such a promise "can be no more than an opinion as to the value of a unique right of action for which there were no known buyers, nor any but an imaginary demand"; and the court held that profit was not realized until payment was made. The Third Circuit Court of Appeals reached the same conclusion in the Cassatt case, supra. To the same effect is the decision of the Sixth Circuit Court of Appeals in the Segall case, supra.

These cases seem to be predicated upon the fact that in a contract of sale of property containing a promise to pay in the future, but not accompanied by notes or other unqualified obligations to pay a definite sum on a day certain, the obligation to pay and the obligation to pass title both being in the future, there is an element of uncertainty in the transaction and the promise has no "market value", fair or unfair. This theory is supported by the decision of the Supreme Court in Lucas v. North Texas Co., 281 U.S. 11, 50 S.Ct. 184, 185, 74 L.Ed. 668. In that case a contract for the sale of timber land was effected on December 30, 1913, and the parties were ready to complete the transaction, but the papers were not prepared and delivered and the purchase price paid until January 5, 1917. The question involved was whether the vendor's gain on the transaction was realized in 1916 or 1917 for tax purposes. The Court said, "The title and right of possession remained in it [the vendor] until the transaction was closed. Consequently unconditional liability of vendee for the purchase price was not created in that year [1916]." And the Court held that the gain was returnable for tax purposes in 1917.

We agree with the taxpayers that the question of fair market value is one of fact, but we think that in such a case as this it is an inferential fact. Here the question of whether or not the payments for the Jones contract promised to be made in 1937 had a fair market value in 1936 within the meaning of the tax laws is, to say the least, one of doubt. The decision of the Tax Court shows that it considered the whole question both as one of fact and as one of law. Whether the question should be considered as one of law

or as one of fact or should be regarded as a mixed question of law and fact there is a sufficient basis in the record to warrant and support the finding and conclusion of the Tax Court. Viewed from the light most favorable to the taxpayers all that can be said is that the record presents a question the answer to which is in some degree doubtful because the decisions of courts including the Tax Court itself are not entirely consistent. In reviewing a decision of the Tax Court, however, this court is not concerned with the strength of the reasoning nor its consistency with decisions in other cases. Unless it is clear that the decision is without foundation in the record or is contrary to law it "must stand." Dobson v. Commissioner, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. 248. Applying these standards prescribed by the Supreme Court, we think the record here including the stipulated facts and the testimony of the witnesses presented questions strictly entrusted to the determination of the Tax Court, and we find no reversible error in its proceedings.

Affirmed.