EDITH M. BENSEL AND WILBUR B. DRIVER, EXECUTORS OF THE ESTATE OF FRANK L. DRIVER, SR., DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70574. Promulgated June 25, 1937.

*Theodore B. Benson, Esq.*, for the petitioners.
*J. R. Johnston, Esq.*, for the respondent.

OPINION.

Murdock : The Commissioner contends that the stipulated value at the date of death of the 50,830 shares of common stock of Driver-Harris Co. was properly included in the decedent's gross estate. His first contention is that section 302 (d) of the Revenue Act of 1926 is authority for including these shares. It provides that the value of the gross estate shall include the value at the time of death of all property "to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke." He also contends that the property may be included under section 302 (c) as a transfer in contemplation of or intended to take effect in possession or enjoyment at or after death. Both provisions have the following exception : "except in case of a bona fide sale for an adequate and full consideration in money or money's worth." The decedent transferred the shares in question to a trustee. Apparently the transfer was irrevocable, but the enjoyment of the interest was subject at the date of his death to change through the exercise of a power by the decedent in conjunction with his son to alter, amend, or modify the agreement. If it should be decided that this was a case of a bona fide sale for an adequate and full consideration in money or money's worth, neither (c) nor (d) of section 302 will be applicable. For this purpose it may be assumed that the language of (d) is broad enough to cover this transfer (see, however, *Helvering v. Helmholz*, 296 U. S. 93), and under such circumstances the questions of whether or not the transfer was in contemplation of death or was made to take effect in possession or enjoyment at or after death need not be decided.

Before deciding the question of consideration, it may be proper to state that there is a great deal of evidence in this record relating to the question of contemplation of death. Evidence of the decedent's state of health shows that he enjoyed good health and was quite active up to January 1925. He suffered at that time a hemiplegic attack which resulted in partial and temporary paralysis. His recovery was rapid, the paralysis disappeared, and he soon re-

turned to his duties. He intended to procure a divorce and remarry. He made a will on June 8, 1926, which was admitted to probate after his death. He stated in the will that he made no provision therein for his son or for his wife because of other provisions which he had theretofore made for them. The evidence does not disclose that he had made any provisions for them other than those contained in the agreement of May 19, 1924, as amended. The proceeds of the sale of the stock to his son were bequeathed to certain persons in stated proportions. He also bequeathed specific property and a large part of the proceeds of the sale to the woman he intended to marry, in case she should be his lawful wife at the date of his death. No provision had been made for her in previous wills. He went to Europe in July 1926 for recreation and also for business purposes. He never returned to the United States, but he kept in close touch with the business of the company, and the officers and directors visited him regularly to discuss matters of business. He continued to receive his salary of $33,000 a year. There is also evidence of the earnings and of the assets of the company. This evidence has been carefully considered, but we have deemed unnecessary a statement of it in the findings of fact.

The provisions of sections 302 (c) and (d) were remedial legislation enacted to prevent the evasion of estate taxes. The Supreme Court said in *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85:

> The purpose of Congress in adding clause (d) to the section as it stood in an earlier act was to prevent the avoidance of the tax by the device of joining with the grantor in the exercise of the power of revocation someone whom he believed would comply with his wishes.

The same Court in *United States* v. *Wells*, 283 U. S. 102, referring to transfers in contemplation of death and transfers intended to take effect at or after death, said:

> The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax.

They do not apply where a decedent at the time of his death owns property which is subject to an option to purchase by one not the object of his bounty. In that case the decedent's interest in the property can be included in his gross estate at no more than the option price. *Wilson* v. *Bowers*, 57 Fed. (2d) 682; *Lomb* v. *Sugden*, 82 Fed. (2d) 166. Cf. *Salvage* v. *Commissioner*, 76 Fed. (2d) 112; affd., *Helvering* v. *Salvage*, 297 U. S. 106; *Omaha National Bank* v. *Commissioner*, 75 Fed. (2d) 434. The respondent contends that the son was the object of his father's bounty, the price fixed was much less than the value of the stock, and to the extent of the excess value the transfer falls within section 302. If the decedent had

entered into the contracts in question with an employee in whom he was interested only because of the man's value as an employee, there would be no justification for including in the decedent's gross estate the fair market value of the shares when in fact this person could obtain the stock from the estate on payment of $232,500. Yet the decedent would have retained the power to alter or amend in conjunction with this other party. The petitioners contend that Frank L. Driver, Jr., was in no sense the object of his father's bounty, but was only a valuable employee of the company. They point to the unfriendly relations between this father and son and say that the interests of these two persons were adverse and they dealt at arm's length in reaching their agreements. There is reason to believe that the terms which the son obtained in these agreements with his father were no more favorable than he might have obtained had he not been related. The two were constantly bargaining over the price. There is no indication that the decedent had the slightest fatherly interest in or affection for his son. The record as a whole indicates that the father's only reason for desiring to retain the services of the son was that he recognized, as time went on, that the son was the most able man in the employ of the company. The stock was not dealt in extensively prior to 1929, and such sales as there were indicate that the price agreed upon between the father and son was not too low. That is, it was not lower than the price at which persons with adverse interests dealing at arm's length might have been expected to have agreed. The obvious reason for the contracts was that the son was demanding protection and the father realized that the corporation, in which he was the largest stockholder, would lose the services of a valuable employee unless the agreements were entered into.

The agreement gave the son an option to purchase the stock at a certain price immediately after the father's death. Although the actual purchase price was much less than the fair market value of the stock at the date of the decedent's death, when the purchase was made, an increase in value was a circumstance which was within the reasonable contemplation of the parties at the time they entered into the agreement. The increase in value of the shares was probably due in this case to the increased use of radios, in which the products of the company were used. The possibility of increase in the value of the shares may have induced the son to enter into the contract. The adequacy of the consideration must be measured at the time the contract was entered into rather than at the time the option was exercised. The consideration in this case was full and adequate in money or money's worth. The contract originally entered into finally ripened into a bona fide sale for an adequate and full consideration in money or money's worth. It was not a substitute for testamentary

disposition nor a device for avoiding estate tax. Thus the transfer to the trustee was within neither the letter nor the spirit of section 302 (d) or (c). This is so either because there was a bona fide sale for an adequate and full consideration in money or money's worth or because the circumstances are wholly without the intendment and purpose of the provisions of section 302. This case is like the *Wilson* and *Lomb* cases, *supra*.

The petitioners contend that the Commissioner allowed an insufficient deduction for executors' commissions and attorneys' fees. The Commissioner stated that the amounts allowed by him were the amounts allowed by the court. He makes no argument on this point in his brief. Although there is no evidence that the amounts allowed by the court, that is, $4,554.55 as executors' commissions and $10,000 as attorneys' fees, have been paid, nevertheless these are proper deductions. *Arthur M. Lamport et al., Executors*, 28 B. T. A. 862, 867; *William Rhinelander Stewart, Jr., et al., Executors*, 31 B. T. A. 201, 206. Cf. *Commissioner v. Strauss*, 77 Fed. (2d) 401.

The final contention made by the petitioners is that they are entitled to deductions of over $85,000 representing claims of Edith M. Bensel against the estate. These claims, they say, consist of $25,000 representing $10,000 due October 1, 1927, and $5,000 due on the first of October 1928, 1929, and 1930, and $60,895.95 claimed to be the commuted value of a $5,000 annuity computed on the life expectancy of this sister at the date of the decedent's death. The decedent died before October 1, 1930, and during his life his sister collected $3,000. Thus the amount due at the date of the decedent's death was certainly not $25,000. Furthermore, there is no evidence to show the life expectancy of the sister or the commuted value of the annuity of $5,000 for that period. However, these matters are relatively unimportant. The statute allows deductions of "such amounts for * * * claims against the estate * * * to the extent that such claims * * * were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered." Edith M. Bensel, during the decedent's life performed valuable services for him. He contracted in consideration of those services to pay her certain sums of money. The contract was bona fide. There is no reason to believe that her claim is not allowed by the laws of New Jersey. The question is to determine the extent to which her claim was contracted for an adequate and full consideration in money or money's worth. The petitioners must show affirmatively the extent to which the claim was contracted for an adequate and full consideration in money or money's worth. *Pauline L. Sheets et al., Executors*, 35 B. T. A. 220. The evidence shows that the sister performed valu-

able services for her brother, but it gives but a poor measure of the value of those services in money or its equivalent. This woman was a housewife with a family. She had no business experience. Her services were performed intermittently. We are well satisfied that her services were not equivalent in value to $85,000. Although they formed a valuable consideration to support the agreement, that is a different thing from an adequate and full consideration in money or money's worth. *Lillian T. Latty, Executrix*, 23 B. T. A. 1250; affd., 62 Fed. (2d) 952. The decedent was heavily in debt, lived extravagantly, and he knew and his sister knew that she could not take $5,000 out of his salary of $33,000 which went through her hands. The amount was beyond his ability to pay. There is evidence that he made other extravagant promises. It seems necessary, under the circumstances, for the Board to determine the extent to which this claim was contracted for an adequate and full consideration in money or money's worth. *Isbell Porter Co.* v. *Commissioner*, 40 Fed. (2d) 432; *Sioux City Stock Yards Co.* v. *Commissioner*, 59 Fed. (2d) 944; *John Wanamaker, Philadelphia*, 22 B. T. A. 487, 504; *E. C. O'Rear*, 28 B. T. A. 698; affd., 80 Fed. (2d) 473; *Julia Dahl et al., Executors*, 24 B. T. A. 1167, 1172; *Boston Safe Deposit & Trust Co. et al., Executors*, 20 B. T. A. 1159, 1164. "The Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, 544. All of the evidence bearing upon this point has been carefully considered and the conclusion has been reached that a proper deduction in this connection is $15,000.

Reviewed by the Board.

*Decision will be entered under Rule 50.*