The Estate of Edwin Royce Armstrong, Deceased, The Northern Trust Company, Executor v. Commissioner.
Estate of Armstrong v. Commissioner
Docket No. 1075.
United States Tax Court
1944 Tax Ct. Memo LEXIS 384; 3 T.C.M. (CCH) 77; T.C.M. (RIA) 44023; January 28, 1944
*384 Held, a certain option contract did not constitute a bona fide sale of stock for adequate and full consideration in money or money's worth and that respondent correctly held that the value of the stock should be included in the gross estate of decedent. Moses Levitan, Esq., 120 S. La Salle St., Chicago, Ill., for the petitioner. Charles Munz, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in estate tax in the amount of $19,198.15. The petition states that approximately $13,473 is in dispute. The error alleged by petitioner is the inclusion in the gross estate of the sum of $80,000, representing the value at the applicable valuation date of an interest in 2,000 shares of stock in the Armstrong Paint & Varnish Works. The principal question presented is whether a certain transfer in trust executed March 14, 1934 constituted a bona fide sale for an adequate and full consideration in money or money's worth. Findings of Fact The parties entered into a stipulation of most of the facts. The facts so stipulated are hereby found as facts in the case. Those facts are substantially as follows: Petitioner, The Northern *385 Trust Company, is executor under the last will and testament of Edwin Royce Armstrong, deceased. The decedent, a resident of Evanston, Illinois, died testate on November 14, 1939. He was survived by his wife, Julia S. Armstrong, his sister, Helen Armstrong, and his brother, Julian Armstrong. At the time of his death, decedent was chairman of the board of directors of Armstrong Paint & Varnish Works, an Illinois corporation (hereinafter called the company), located at Chicago, Illinois, and engaged in the manufacture of paints, varnishes, paint and varnish containers, and kindred products. The business was started in 1854 by the father of the decedent. The corporation was organized in 1905. Decedent was president of the company from September 7, 1905 to October 9, 1924. Thereafter, as chairman of the board of directors, he continued to exercise active general supervision over the affairs of the company until on or about May 24, 1937, when decedent suffered a stroke. Mitchel Goldsmith, not related to the decedent nor to any member of the decedent's family, entered the employ of the company as an office boy and stenographer on February 12, 1909. In 1910 and 1911 he was in charge of *386 sales correspondence. From 1912 to 1915 he was assistant sales manager of the company. From 1915 to 1918 he was sales manager of the Chicago Paint Company, a subsidiary of the company. In 1918 he was appointed general manager of the Continental Paint Company, a subsidiary of the company, and continued as sales manager of Chicago Paint Company as well. On July 30, 1919 he was elected secretary of the company and shortly thereafter assumed the duties of general manager of the company. Goldsmith's employment by the company continued without interruption from February 12, 1909, when he first entered the employ of the company, and he is at the present time in the employ of the company as its president and general manager. On November 17, 1933 an agreement was entered into between the decedent, Goldsmith and The Northern Trust Company as trustee, which agreement was supplanted by an identical agreement by and between the same parties on March 14, 1934, save and except the elimination of a "gold clause." Pursuant to the agreement, decedent assigned and transferred 500 shares of common stock of the company of no par value to The Northern Trust Company as trustee thereunder, and a certificate *387 for the 500 shares was issued in the name of and delivered to The Northern Trust Company as trustee under the agreement. As a result of a stock dividend declared by the company on October 15, 1935, and pursuant to an amendment to the Articles of Incorporation of the company adopted on November 6, 1935, the 500 shares of common stock of the company issued to The Northern Trust Company as trustee were exchanged for 2,000 shares of common stock of the company of the par value of $50 per share. Pursuant thereto, there was issued to The Northern Trust Company, as trustee, a new certificate for the 2,000 shares of common stock of the company of the par value of $50 per share, and on November 19, 1935 a modification and supplement of the agreement of March 14, 1934 was executed by the parties, giving effect to the change in the number and par value of the shares and provided that the price at which Goldsmith was to purchase the 2,000 shares was to be $12.50 per share instead of $50 per share, as provided in the agreement of March 14, 1934. In so far as material to the case the agreement and declaration of trust, as amended, provided substantially as follows: (a) The trustee was to hold *388 the 2,000 shares of stock until the death of the decedent and thereafter until the option to purchase the stock was exercised by Goldsmith and during that time was to turn over to Julia S. Armstrong, wife of the decedent, the dividends thereon. She was also permitted to vote the stock during the existence of the trust. (b) After the death of decedent and within five years thereafter, Goldsmith had the right to pay to the trustee the sum of $25,000 for the shares of stock upon terms agreed upon between him (Goldsmith) and Julia S. Armstrong and upon payment to the trustee the money was to be turned over to Julia S. Armstrong and the shares of stock delivered to Goldsmith. (c) In the event of the death of Julia S. Armstrong before the death of decedent, Goldsmith was to receive upon the death of decedent all the shares of stock placed in the trust without any payment therefor. In the event of the death of Julia S. Armstrong after the death of the decedent and before the exercise of the option to purchase by Goldsmith, he (Goldsmith) was entitled to all of the shares without payment therefor. In the event of the death of Julia S. Armstrong after the death of decedent and after the *389 exercise of the option to purchase but prior to payment of the entire purchase price by Goldsmith, he was to receive the remainder of the shares without further payment therefor. (d) If Goldsmith predeceased the decedent or, prior to the death of the decedent, was adjudged insane or incompetent or ceased to be an employee of the company or one of its subsidiaries, the trust was to terminate and become null and void and the shares of stock were to be returned to the decedent. (e) If Goldsmith died before the full payment of $25,000 had been made the remaining shares not paid for and not transferred by the trustee to Goldsmith were to be transferred to Julia S. Armstrong. (f) In the event Goldsmith desired to transfer or sell any of such stock after acquisition, the company should have an option for a period of 60 days after receipt of notice of desire to sell to purchase the stock or any part thereof at a price equal to one-half of the book value of such stock. Also, in the event of the death of Goldsmith or should he no longer be employed by the company, the company was to have an option for 60 days in which to elect or refuse to purchase said stock at a price equal to onehalf of *390 the book value thereof. On or about December 17, 1939, after the death of the decedent, Goldsmith paid to The Northern Trust Company, as trustee, under the agreement, the sum of $25,000 in payment for the 2,000 shares and the certificate evidencing the 2,000 shares was then and there assigned and delivered to Goldsmith by The Northern Trust Company as trustee, under and pursuant to the agreement of March 14, 1934. Pursuant to the agreement the trustee turned over the sum of $25,000 to Julia S. Armstrong, the wife of the decedent. From November 17, 1933 and up to December 17, 1939, when the 2,000 shares were assigned and delivered to Goldsmith, all dividends on the shares covered by the agreements were paid to The Northern Trust Company and by the Trust Company turned over to Julia S. Armstrong, the wife of decedent, pursuant to the terms of the agreement, and the stock was voted by Julia S. Armstrong. On July 31, 1933 an agreement and declaration of trust was created by the decedent naming Goldsmith and Julia S. Armstrong as trustees. The agreement was modified by the parties by "Modification and Supplement" dated. November 19, 1935. Pursuant to the agreement and the modification *391 thereof, the decedent transferred to the trustees for sale to employees of the company at the purchase price set forth in the agreements the number of shares set forth therein. On July 31, 1933 there were outstanding 8,543 shares of common stock of Armstrong Paint & Varnish Works of no par value, of which the decedent owned 4,513 shares. On October 3, 1938 the Commissioner notified the decedent of a proposed deficiency in respect of his gift tax liability for the calendar year 1933. The respondent's letter contained the following paragraph: "By the terms of the agreement dated November 17, 1933, Mrs. Julia S. Armstrong is entitled to receive $25,000.00 from property placed in trust for sale to Mitchel Goldsmith. While this amount is only payable to Mrs. Armstrong if, as and when it is paid to the trustees by Mr. Goldsmith, you have parted with all dominion and control over the 500 shares of stock transferred to this trust. The possibility of reverter provided by the terms of the trust agreement is so remote that it will only revert to you on the happening of conditions precedent which cannot be taken into consideration in determining the value of the gift." The amount of the gift *392 tax set out in the notice of October 3, 1938 was paid by the decedent. The executor did not report as part of the gross estate of the decedent the 2,000 shares covered by the agreement of March 14, 1934. On January 25, 1943 the Commissioner notified The Northern Trust Company, as executor of the Estate of Edwin Royce Armstrong, of a deficiency in respect of the estate tax liability of said estate. The respondent's notice contained the following paragraphs: "There has been included in the gross estate the sum of $80,000.00, representing the value, at the applicable valuation date, of an interest in property transferred by the decedent to the Northern Trust Company, Trustee, pursuant to a declaration of trust dated November 17, 1933, as amended by a declaration of trust executed March 14, 1934, and as further amended by a supplement thereto dated November 19, 1935. "It is held that said amount is includible in the decedent's gross estate under the provisions of Sections 811 (c) and (d) of the Internal Revenue Code as a transfer intended to take effect in possession or enjoyment at or after his death and as a transfer where the enjoyment thereof was subject, at the date of his death, *393 to change through the exercise of a power by the decedent in conjunction with another person to alter, amend, revoke, or terminate. It is further found that to the extent so included in the gross estate, said transfer did not constitute a bona fide sale for an adequate and full consideration in money or money's worth, within the intendment of that expression as used in Section 811 of the Internal Revenue Code." From the entire record we find the following additional facts: The decedent fully appreciated Goldsmith's value to the company and at one time expressed apprehension of the consequences if the company lost his services. The agreement between the parties did not constitute a bona fide sale for an adequate and full consideration in money or money's worth. Opinion VAN FOSSAN, Judge: Petitioner contends for the exclusion from the taxable estate of the entire value of the stock or, in the alternative, for the inclusion only to the extent of the option price. Respondent contends that the value of the stock as of the date of death of the decedent is includible under the provisions of section 811 (c) and (d) of the Internal Revenue Code, arguing in support that the transfer was *394 not a bona fide sale for an adequate and full consideration in money or money's worth. We have searched the stipulated facts and oral testimony carefully and are unable to find any consideration moving from Goldsmith to Armstrong or the corporation on which to erect a finding that the contract was for an adequate and full consideration in money or money's worth. There is no evidence of the value of the stock at any date. Thus no measure of value is supplied. The record does not reveal that Goldsmith ever suggested or threatened that he would leave the employ of the company. The evidence which was evidently calculated to prove this fact falls far short of the goal. Nor had Goldsmith made unsatisfied demands on the company. For aught that appears at the time the contract was entered into Goldsmith was happy and contented in his employment. Petitioner's case gains no strength by referring to the terms of the contract. In addition to the lack of actual consideration, the very terms are suggestive in certain eventualities of a gift. In the event of the death of Julia S. Armstrong before the death of decedent, Goldsmith was to receive upon the death of decedent all shares of stock placed *395 in trust, without any payment therefor. Likewise, if Julia S. Armstrong died after decedent but before the exercise of the option by Goldsmith, all of the shares were to be delivered to Goldsmith without payment therefor. Of similar tenor was the provision that if Julia S. Armstrong died after the exercise of the option but before payment in full for the shares, Goldsmith was to receive all the stock without further payment. All of these provisions suggest gratuity on the part of Armstrong. We are of the opinion that the option contract did not constitute a bona fide sale for an adequate and full consideration in money or money's worth and that the respondent properly included the value of the stock is the gross estate of decedent. In Edith M. Bensel et al., 36 B.T.A. 246, affirmed 100 Fed. (2d) 639, on which petitioner relies, the facts are very different. In that case there had been constant disagreement between the father and his son, a valuable employee of the company. The son had made definite demands of the father and asked for a guarantee against dismissal. The agreement was the consequence of these demands which, *396 together with other facts, affords us basis for finding adequate and full consideration in money or money's worth. Decision will be entered for the respondent.