*Decision will be entered under Rule 50.*

ESTATE OF MARY GOWDY, M. LOUISE COLLINS, ADMINISTRATRIX C. T. A., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37121. Promulgated November 18, 1953.

*Daniel J. Triggs, Esq.,* for the petitioner.
*Nathan M. Silverstein, Esq.,* for the respondent.

#### OPINION.

TIETJENS, *Judge:* The respondent determined a deficiency of $1,624.12 in estate tax. Several issues have been stipulated and the single issue left for decision is whether certain United States savings bonds, Series G, are to be included in the gross estate at their par value, as determined by the respondent, or at their redemption value as of the date of death. Agreement on the other issues can be reflected in a Rule 50 computation. All the facts have been stipulated and are found as stipulated.

Mary Gowdy died August 27, 1947. Her administratrix elected to value the estate as of the date of death.

At the date of death the decedent owned two United States defense bonds, Series G, each issued on December 1, 1941, in the principal amount of $1,000. The respondent determined the fair market value of these bonds to be $2,000 and included this amount in the gross estate. The petitioner included these bonds on the estate tax return at a total value of $1,904 which was their redemption value as of August 27, 1947.

The decedent also owned at the time of her death jointly with M. Louise Collins, Series G bonds in the principal amount of $64,800 which the respondent determined had a value equal to that amount. These bonds were listed in the estate tax return at $61,736.40, their redemption value as of August 27, 1947.

Sometime after the death of the decedent, M. Louise Collins surrendered the bonds of which she was the surviving coowner, for reissue in her name with her husband as coowner as provided for in the law and regulations governing such bonds. The bonds were subsequently so reissued.

The regulations governing Series G bonds are found in Treasury Department Circular No. 530, Sixth Revision, dated February 13, 1945, as amended by the first amendment dated July 25, 1947. That circular describes Series G bonds as "current income" bonds. They are nonmarketable and nonassignable. These bonds differ from the perhaps better known Series E bonds which are called "appreciation bonds" in that Series G bonds are bought at par, e. g., a $1,000 G bond costs the purchaser $1,000, whereas, a $1,000 E bond costs $750, and has an increasing redemption value which at maturity equals $1,000 or face value. Also, each Series G bond bears interest at 2½ per cent payable by check semiannually 6 months from issue date, whereas, the Series E bond interest is not paid currently but is added according to a schedule to the purchase price so that at maturity the bond with the accrued interest will equal $1,000. The regulations provide with reference to the Series G bonds that, except for redemption at par as provided for therein,

full advantage of interest at the rate specified may be secured only if the bonds are held to maturity; if bonds are redeemed before maturity at current redemption values the difference between the face or full maturity value and the current redemption value then payable in accordance with the table printed on each bond will represent an adjustment of interest for the rate appropriate for the shorter term, as set forth in the tables attached to the circular announcing the issue of such bonds.

According to the regulations these bonds may be redeemed before maturity in whole or in part on 1 month's notice in writing on the first day of any month not less than 6 months from the issue date at the

appropriate redemption value shown in a table printed on the bond. To the time of maturity the redemption value is less than the par value, the difference being treated as an adjustment of the interest on the bonds as noted above. For a discussion of the problem of including accrued interest on Series G bonds in the gross estate of a deceased owner see *Estate of Willis L. King, Jr.*, 18 T. C. 414.

However, Series G bonds may be redeemed at par before maturity in amounts corresponding with authorized denominations, not less than 6 months from the issue date, "upon the death of an owner or coowner, if a natural person, * * * following actual receipt of written notice of intention to redeem *at par* * * * given * * * within six months after the date of death of the owner or coowner * * *." Treasury Department Circular No. 530, *supra*. The time of giving notice may be extended under circumstances not here important. The regulations further provide with reference to bonds registered in coownership form that if either coowner dies, the surviving coowner will be recognized as the sole and absolute owner of the bonds and payment or reissue will be made only to such survivor as though the bond were registered in his name alone. It is also provided that upon death of the owner of a bond not survived by a coowner (as in the case here with the two $1,000 bonds) the bond will be considered as belonging to his estate and will be paid or reissued accordingly.

Both the respondent and the petitioner agree that the decedent had an interest in the bonds and that section 811 of the Internal Revenue Code [1] requires the inclusion in the decedent's gross estate of the value of that interest. The only point of difference between them is the value of the decedent's interest in the Series G bonds—the respondent claiming that value to be the *par* or face of the bonds, and the petitioner contending for the redemption value as of the date of decedent's death.

The respondent summarizes his argument thus:

Bonds of Series G may be redeemed at par, in whole or in part upon the death of the owner or coowner if a natural person, which circumstances prevail in this case. This right to redeem at par is the extent of the value of the property right which is transferred from the dead to the living at the time of death, and therefore the face value of the bonds is properly includible in the gross estate.

We agree with the respondent's determination. The question is solely one of valuation, complicated somewhat by the nonmarketable character of the bonds and by the redemption provisions of the gov-

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death * * *

erning regulations. The salient factor in determining the value of a Series G bond with the peculiar "bundle of rights" which it evidences, we think, is the cost or par value thereof. Cost has been held to be cogent evidence of value. *Guggenheim* v. *Rasquin*, 312 U. S. 254. Decedent paid par for the bonds here in question. She could have purchased them for no less at any time. They bore 2½ per cent interest payable semiannually if held 12 years to their maturity. As a practical matter, if the decedent had redeemed them earlier than maturity they would have borne interest at a reduced rate. From that standpoint it is to the advantage of the owner of such bonds to hold to maturity rather than to redeem at an earlier date. Too, it is conceivable that Series G bonds could have a value of more than par as they approach maturity. Thus a purchaser who would be willing to pay $1,000 for a 12-year bond bearing 2½ per cent interest over the term would certainly be willing to pay at least that much for the same bond half way through the 12-year term.

The petitioner's argument places too much emphasis on a single feature of the Series G bonds—i. e., the right of the decedent to redeem prior to maturity. But that right is only one of the incidents of ownership and to make the value of the bonds depend on it alone is to ignore and place no value at all on the other features which the Federal Treasury Department devised to attract investors to this particular issue of savings bonds.

While the fact situations are by no means identical, we think the rationale employed by the Supreme Court in *Guggenheim* v. *Rasquin*, *supra*, can properly be employed here. There the Court had the problem of determining for gift tax purposes the value of a single premium life insurance policy irrevocably assigned by the donor at the time of purchase. The donor contended that the cash surrender value of the policy was the proper criterion of value. The Commissioner contended for "cost to the donor." The Supreme Court, in deciding for the Commissioner, held, in effect, as we are holding here, that the right to surrender for cash was only one of the legal incidents of ownership and that to determine value by valuing such right alone would not be proper. In the absence of any other suggested criterion the Court adopted the cost of the policy as its value.

So here we decide that decedent as owner and coowner of the Series G bonds had more than the mere right to redeem such bonds at less than par prior to maturity and that the value of such bonds to her was the price she paid for them, or par.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL and WITHEY, *JJ.*, dissent.