**KUEHNER**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 4814.**

United States Court of Appeals
First Circuit.

July 2, 1954.

Christopher Del Sesto, Providence, R. I. (Owen P. Reid and Eustace T. Pliakas, Providence, R. I., on brief), for petitioner.

Melva M. Graney, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., on brief), for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a decision of the Tax Court entered on October 15,

1953, 20 T.C. 875, determining a deficiency in the petitioner's income tax for the calendar year 1947 in the amount of $13,808.75. The following material facts were stipulated and were adopted by the Tax Court as its findings of fact.

The petitioner filed her 1947 income tax return on the cash basis with the Collector of Internal Revenue of Providence, R. I. On August 6, 1947, the petitioner and Lena Allin owned all the shares of Alkay Jewelry Co. issued and outstanding. The petitioner owned 50 shares of Alkay stock which were acquired on October 29, 1946 at a cost of $200 per share. On August 6, 1947, the petitioner, Alkay and the Rhode Island Hospital Trust Company entered into an agreement and a supplement thereto, the pertinent provisions of which were as follows:

The Trust Company was appointed Trustee for the purposes of the agreement. The petitioner agreed "herewith" to deliver to the Trustee her 50 shares of the common stock of Alkay together with an assignment of all her right, title and interest in the 50 shares. She agreed to sell, and Alkay agreed to buy, 10 shares of said stock on February 1st of 1948 through 1952 for a payment of $13,000 on said date in each of those years. All dividends received by the Trustee as record owner of the stock were to be paid to the petitioner and were to be deducted from the aggregate purchase price of $65,000. Alkay agreed to deliver $65,000 to the Trustee on the date of the execution of the agreement. On February 1st of each of the years 1948 through 1952, the Trustee agreed to deliver 10 shares of the stock to Alkay and pay the petitioner $13,000, less any dividends received on the stock by the Trustee. The Trustee was to permit Lena Allin or her executor or administrator to exercise any and all voting rights with respect to any shares of the stock of which it was the record holder. The $65,000 delivered by Alkay was to be invested by the Trustee by depositing it in banks or by buying United States Government Bonds. All interest received by the Trustee was to be paid to the petitioner on February 6, 1952. If the petitioner died before February 6, 1952, the Trustee, upon request in writing from the petitioner's executor or administrator, agreed to deliver to the executor or administrator the balance of the $65,000 purchase price and deliver to Alkay the remaining certificates of stock in its possession. If Alkay filed a voluntary petition in bankruptcy or was declared bankrupt or insolvent, or if a receiver of its property were appointed, the petitioner could demand from the Trustee the remaining balance of the $65,000 and, upon delivery of such balance, the Trustee agreed to deliver to the trustee in bankruptcy for or the receiver of the property of Alkay the remaining certificates of Alkay stock in its possession. The agreement was binding on the heirs, executors, administrators, successors and assigns of the parties.

Pursuant to the agreement, the petitioner deposited with the Trustee on August 6, 1947, 50 shares of Alkay stock duly endorsed for transfer. Thereafter the 50 shares were registered on the books of Alkay in the name of "Rhode Island Hospital Trust Company, Trustee under agreement dated August 6, 1947." On August 7, 1947, Alkay deposited $65,000 with the Trustee, and on August 25, 1947, the Trustee purchased $70,000 face value of United States Savings Bonds, Series F for $51,800. In February of each year 1948 through 1952 the Trustee made payments to the petitioner of $12,950 ($13,000 less $50 Trustee fee). Periodically, upon payment to the petitioner of these amounts, the Trustee delivered a ten share certificate of stock to Alkay pursuant to the schedule set out in the agreement. The petitioner did not report any gain from the sale or exchange of capital assets in her income tax return for 1947. For each of the years 1948, 1949, 1950 and 1951 she reported the sale of 10 shares of Alkay stock.

In his notice of deficiency the Commissioner of Internal Revenue stated

that the petitioner's transfer of her 50 Alkay shares in 1947 to the Trustee constituted a sale of such stock in 1947 and that the gain on the sale was taxable to the petitioner in 1947 as a long-term capital gain. The Tax Court sustained the Commissioner's deficiency determination and this appeal followed.

There is no dispute that the petitioner realized a gain from the transaction she entered into on August 6, 1947, but the parties are in disagreement as to the amount of that gain which is taxable to the petitioner for the year 1947. The petitioner contends that the agreement of August 6, 1947 was nothing more than an executory contract to make five separate future sales of ten shares in each of the years 1948 through 1952, coupled with an escrow agreement to insure performance by both parties, and that she did not receive any cash or the equivalent of cash in 1947 as a result of the agreement. Since the petitioner filed her income tax return for 1947 on the cash basis, she concludes that she realized no taxable income in 1947 as a result of the agreement. The respondent, on the other hand, argues that the August 6, 1947 agreement constituted a completed exchange in 1947 of the petitioner's 50 shares of Alkay stock for property consisting of a beneficial interest in a $65,000 trust fund, and that the fair market value of the beneficial interest received by the petitioner in 1947 constituted an amount realized by her in 1947. The respondent, therefore,

concludes that the entire gain from the petitioner's disposition of her 50 shares of Alkay stock was realized by her in 1947.

██ Under the provisions of 26 U. S.C. §§ 42(a) and 111(a) and (b),[1] the gain from the sale or other disposition of the petitioner's Alkay stock in 1947 is the excess of the amount realized by the petitioner therefrom in 1947 over the adjusted basis of the stock. In the instant case the adjusted basis of the petitioner's stock was its cost amounting to $10,000. And the amount realized by the petitioner in 1947 from the sale or other disposition of her Alkay stock is the sum of money received in 1947, which in this case is zero, plus the fair market value of the property received by the petitioner in 1947 under the terms of the agreement. Therefore, the amount of the petitioner's gain in 1947 as a result of the agreement is governed by the fair market value of the property received by the petitioner in 1947 under the terms of the agreement. The Tax Court found that the fair market value of the property received by the petitioner in 1947 was $65,000.[2] It is our function to determine whether that finding is clearly erroneous. 26 U.S.C. § 1141(a); United States v. State Street Trust Co., 1 Cir., 1942, 124 F.2d 948; Amoroso v. Commissioner of Internal Revenue, 1 Cir., 1952, 193 F.2d 583, certiorari denied, 1952, 343 U.S. 926, 72 S.Ct. 759, 96 L.Ed. 1337. For the following reasons we do not believe

1. "§ 42. *Period in which items of gross income included*
"(a) *General rule.* The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *"
"§ 111. *Determination of amount of, and recognition of, gain or loss*
"(a) *Computation of gain or loss.* The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall

be the excess of the adjusted basis provided in such section for determining loss over the amount realized.
"(b) *Amount realized.* The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

2. U.S.Treas.Reg. 111, § 29.111–1 states in part:
"* * * The fair market value of property is a question of fact, but only in rare and extraordinary cases will property be considered to have no fair market value. * * *"

that the $65,000 valuation found by the Tax Court is clearly erroneous.

An important factor in determining the fair market value in 1947 of the property received by the petitioner under the terms of the agreement is the probability in 1947 that Alkay's promise to pay $13,000 in February of 1948 through 1952 would be fulfilled. Whitlow v. Commissioner of Internal Revenue, 8 Cir., 1936, 82 F.2d 569; Perry v. Commissioner of Internal Revenue, 8 Cir., 1945, 152 F.2d 183. In the instant case, there was a high degree of certainty in 1947 that the petitioner would receive an aggregate of $65,000 within a period of approximately four and one-half years. The petitioner did not receive in 1947 a mere promise by Alkay to pay an indeterminate sum in the future. Cf. Burnet v. Logan, 1931, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. Quite to the contrary, Alkay promised to pay $13,000 in February of each of the years 1948 through 1952 and agreed to deposit, and immediately did deposit with the Trustee, the exact amount of the total future payment of $65,000. Also the future payment of this sum to the petitioner by the Trustee was not conditioned upon further performance of either the petitioner or Alkay. By the terms of the agreement, therefore, a fixed sum was irrevocably set aside for the petitioner's sole benefit. See E. T. Sproull v. C. I. R., 1951, 16 T.C. 244, affirmed per curiam, 6 Cir., 1952, 194 F.2d 541. Alkay's promise to pay was secured, unconditioned and fixed in amount, and thus could have been properly regarded by the Tax Court as the "equivalent of cash." Pinellas Ice & Cold Storage Co. v. Commissioner, 1933, 287 U.S. 462, 469, 53 S.Ct. 257, 259, 77 L.Ed. 428.

Under the terms of the 1947 agreement the interest from the invested $65,000 was payable to the petitioner.

The Trustee's duties were merely ministerial and the economic benefits of the $65,000 fund held by it belonged to the petitioner. See Scott P. Myers, 1934, 30 B.T.A. 44. Also, there was no provision in the 1947 agreement prohibiting the assignment of the property received by the petitioner. The agreement specifically provided that the "terms, conditions and covenants of this agreement shall inure to the benefit of and be binding upon the respective parties hereto and their successors and assigns." See E. T. Sproull, supra; Ward v. Commissioner of Internal Revenue, 2 Cir., 1947, 159 F.2d 502.

■ The Commissioner's valuation of the property received by the petitioner under the terms of the 1947 agreement is presumptively correct, and the petitioner has the burden of proving it to be wrong. Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; MacMaster v. Commissioner of Internal Revenue, 3 Cir., 1932, 62 F.2d 81; Boudreau v. Commissioner of Internal Revenue, 5 Cir., 1943, 134 F.2d 360. In the instant case, the petitioner introduced no evidence other than the agreement itself to show that her interest in the fund held by the Trustee was not worth $65,000 in 1947. See Oberwinder v. Commissioner of Internal Revenue, 8 Cir., 1945, 147 F.2d 255.

■ Under the provisions of 26 U. S.C. § 111(c),[3] in the case of a sale or exchange, the extent to which the petitioner's gain from the 1947 agreement, as determined by § 111(a) and (b), shall be recognized is determined by the provisions of § 112 of the Internal Revenue Code. Section 112 provides that upon the sale or exchange of property the entire amount of the gain determined under § 111 shall be recognized, with exceptions not here material. The petitioner argues that none of her gain from the 1947 agreement should be rec-

3. "§ 111. *Determination of amount of, and recognition of, gain or loss*
* * * *
"(c) *Recognition of gain or loss.* In the case of a sale or exchange, the ex-

tent to which the gain or loss determined under this section shall be recognized for the purposes of this chapter, shall be determined under the provisions of section 112."

ognized for the year 1947 because there was no "sale or exchange" of her Alkay stock in 1947.

We have already held that the petitioner received a property interest in 1947 which the Tax Court was justified in evaluating at $65,000. In consideration for the receipt of this property interest the petitioner under the terms of the agreement irrevocably transferred in 1947 all of her Alkay stock to the Trustee. The voting rights of the stock held by the Trustee as record owner were vested in Lena Allin, the sole remaining stockholder of Alkay or her executor or administrator. Any dividends paid on the stock were to be applied to the aggregate purchase price of $65,000. The agreement of August 6, 1947, therefore, clearly constituted a "sale or exchange" of the petitioner's Alkay stock within the meaning of §§ 111 and 112.

The decision of the Tax Court is affirmed.