**M. Louise COLLINS, Administratrix, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 4848.**

United States Court of Appeals First Circuit.

Decided Nov. 9, 1954.

Daniel J. Triggs, Boston, Mass., for petitioner.

Davis W. Morton, Jr., Sp. Asst. to the Atty. Gen., with whom H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and Lee A. Jackson, Sp. Assts. to the Atty. Gen., were on the brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for review of a decision of the Tax Court of the United States [Gowdy's Estate v. Commission-er of Internal Revenue, 21 T.C. 219] entered on January 22, 1954, determining a deficiency of $1,207.13 in estate tax on the estate of Mary Gowdy, of which petitioner is administratrix c. t. a. The following material facts were stipulated and were adopted by the Tax Court as its findings of fact.

Mary Gowdy died on August 27, 1947. At the date of death the decedent owned two United States Defense Bonds, Series G, each issued on December 1, 1941, in the principal amount of $1,000. The Commissioner determined "the fair market value" of these two bonds to be the total face value, $2,000. The decedent also owned jointly with the petitioner 33 United States Savings Bonds, Series G, in the principal amount of $64,800, which amount was determined by the Commissioner to be the value of the bonds at the date of death of the decedent. The petitioner in her estate tax return valued the bonds at their redemption value as of the date of the death of the decedent which valuation totalled $1,904 with respect to the two individually owned bonds and $61,736.40 with respect to the 33 jointly owned bonds.

The laws and regulations governing United States Savings Bonds, Series G, are found in Treasury Department Circular No. 530, Sixth Revision, dated February 13, 1945, as amended by the first amendment dated July 25, 1947. Series G bonds are non-transferable and may not be hypothecated or pledged as collateral for a loan or used as security for the performance of an obligation with exceptions not pertinent here. They bear interest at 2½% of their par value payable twice a year beginning six months from issue date. These bonds may be redeemed by the owner on one month's notice in writing at the appropriate redemption value as shown in the table printed on the bond. The redemption value is always less than the par value until maturity. The bonds cannot be called for redemption by the government prior to maturity. A Series G bond may be redeemed *at par* before maturity " * * * not less than six

months from issue date, (1) upon the death of an owner or co-owner, if a natural person * * * following actual receipt of written notice of intention to redeem at par * * * to be received * * * within six months after the date of death of owner or co-owner * * *." The notice period may be extended in the event of "litigation or delay in the appointment of a legal representative of the estate or in the receipt of notice of death." The regulations further provide that upon the death of the owner the bond will belong to his estate and will be paid or reissued accordingly and that in any event "the person entitled to the bond may hold it without change of registration and will have the right to payment before or at maturity." In the event of the death of a coowner of the bond, "the surviving coowner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor."

The Tax Court found that the decedent's right to surrender the bonds for their redemption value was only one of the legal incidents of ownership and that to determine the value of the bonds by valuing such right alone would not be proper. It, therefore, found that the value of the bonds was the price decedent paid for them or par and sustained the Commissioner's deficiency determination, and this petition for review followed.

The contention of the petitioner, which we shall first consider, is that the redemption value of these Series G bonds is analogous to the option price of stock, which option price has been held to be the maximum value of such stock for estate tax purposes; citing Wilson v. Bowers, 2 Cir., 1932, 57 F.2d 682; Lomb v. Sugden, 2 Cir., 1936, 82 F.2d 166, and Commissioner of Internal Revenue v. Bensel, 3 Cir., 1938, 100 F.2d 639, and that, therefore, such redemption value should be the criterion of the value of the bonds for estate tax purposes. This contention is unsound because Series G bonds are not comparable with the stock and option rights involved in the Wilson, Lomb and Bensel cases, supra. In the stock option cases the holder of the option always has the right upon the death of the owner to purchase the stock at the option price. Wilson v. Bowers, supra, 57 F.2d at page 683; Lomb v. Sugden, supra, 82 F.2d at page 167; Edith M. Bensel, Executors, 1937, 36 B.T.A. 246, 248, affirmed sub nom. Commissioner of Internal Revenue v. Bensel, supra. The decedent's personal representative cannot elect to keep the property as in the instant case but has to sell if the option holder considers the property to be more valuable or as valuable as the option price. Certainly the value to the decedent of these Series G bonds would have been less if she knew that in the event of her death the government could choose, if it so wished, to redeem the bonds at their then redemption value. She knew, however, that the government could not elect to redeem at the redemption value but that in contrast to the stock option situation, her executor had the power to redeem the bonds for their full value. We do not disagree with the results of the aforementioned three cases but merely hold that the Series G bonds owned by the decedent are of a nature different from that of the stock and option rights involved in those cases.

The petitioner's basic argument seems to be that the sole criterion which should be applied in determining the value of Series G bonds for estate tax purposes is their redemption value as of the date of death of the decedent. The respondent claims that the Tax Court was correct in holding that the value of the decedent's interest was to be determined by valuing the other legal incidents of ownership along with the cash redemption value.

■■ The findings of fact of the Tax Court shall not be set aside unless clearly erroneous. Amoroso v. Commissioner of Internal Revenue, 1 Cir., 1952, 193 F.2d 583, certiorari denied 1952, 343 U.S. 926, 72 S.Ct. 759, 96 L.Ed. 1337; Kuehner v. Commissioner of Internal Revenue, 1

Cir., 1954, 214 F.2d 437. Even where all material facts are stipulated, as in this case, a finding of fact made by the Tax Court based on a reasonable inference from such stipulated facts will not be set aside upon review even though this court could possibly draw a different inference. Rollingwood Corp. v. Commissioner of Internal Revenue, 9 Cir., 1951, 190 F.2d 263. In In re Nathan's Estate, 9 Cir., 1948, 166 F.2d 422, 425, the court said: "The question of fair market value for tax purposes is ever one of fact and not of formula, and we have repeatedly held that a decision of the Tax Court on this question will be sustained if supported by substantial evidence. * * *"

■■■ In order to determine whether the finding of value is clearly erroneous it is necessary to examine the criterion which was employed by the Tax Court in arriving at its determination of value, for what is the proper criterion is a question of law. See Maytag v. Commissioner of Internal Revenue, 10 Cir., 1951, 187 F.2d 962. But even if the Tax Court applied an incorrect criterion, its finding will not be reversed "* * * if the findings of fact, governed by the correct rule of law, were sufficient to sustain the decision and had adequate support in the evidence." Maytag v. Commissioner of Internal Revenue, supra, at page 964. Title 26 U.S.C. § 811 provides as follows:

"§ 811. *Gross estate*

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) *Decedent's interest.* To the extent of the interest therein of the decedent at the time of his death; * * *."

It is clear that the value of the Series G bonds owned by the decedent is to be included in the gross estate. While § 811 does not set out a definition of value, U.S.Treas.Reg. 105, § 81.10 [1] states that the value of property includible in the gross estate is its fair market value at the time of the decedent's death and that all relevant facts and elements of value as of the date of the decedent's death should be considered. This Treasury Regulation has the force of law as Congress has not amended the above quoted language of § 811 since 1934,[2] and Congress has included substantially the same language in the Internal Revenue Code of 1954, §§ 2031(a), 2033, 68A Stat. 380, 381, 26 U.S.C.A., Mass. Mutual Life Ins. Co. v. U. S., 1933, 288 U.S. 269, 53 S.Ct. 337, 77 L.Ed. 739; Helvering v. Winmill, 1938, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52; Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 526.

In Guggenheim v. Rasquin, 1941, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813, it was held in interpreting a Treasury Regulation dealing with valuation for gift tax purposes and which contained

1. § 81.10 Valuation of property—(a) *General.* The value of every item of property includible in the gross estate is the fair market value thereof at the time of the decedent's death; or, if the executor elects in accordance with the provisions of § 81.11 it is the fair market value thereof at the date therein prescribed or such value adjusted as therein set forth. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The fair market value of a particular kind of property includible in the gross estate is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the applicable valuation date should be considered in every case.

2. The amendment of 1934 merely added "except real property situated outside the United States" to the act as originally passed in 1926. 48 Stat. 754.

language substantially similar to that in U.S.Treas.Reg. 105, § 81.10 that such regulation did not establish market price as the sole criterion of value. The Court in the Guggenheim case, 312 U.S. at page 258, 61 S.Ct. at page 509 said: "* * Cost is cogent evidence of value. And here it is the only suggested criterion which reflects the value to the owner of the entire bundle of rights in a single-premium policy—the right to retain it as well as the right to surrender it. Cost in this situation is not market price in the normal sense of the term. But the absence of market price is no barrier to valuation. * * *"

We do not agree with the contention of petitioner that the rationale of Guggenheim v. Rasquin, supra, is inapplicable to the present case. The petitioner in her brief states that in the Guggenheim case "the Court was dealing with the value of the policies of the owners—*the transferees.*" That interpretation is rebutted by Guggenheim v. Rasquin, 2 Cir., 1940, 110 F.2d 371, 373, affirmed 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813 where the court said: "* * * The gift tax, it is to be borne in mind, is imposed on the donor and is measured by the value of the property given by him, not by the value of the property in the hands of the donee. * * *" It is true that a Series G bond is not identical with a single premium life insurance policy, but they share certain salient features which were deemed to be important by the Supreme Court in analyzing the nature of the property transferred in the Guggenheim case. These salient features are: the lack of a willing buyer-willing seller situation which would allow a fair market value to be ascertained; the existence of rights over and above the mere right to surrender the bond or policy such as the right to retain the property for its investment virtues, and the right to receive the face value upon death in the case of the policy and the right to receive the face value upon maturity in the case of the bond. To hold that the Tax Court should only have considered redemption value would be in direct contradiction of the reasoning of the Supreme Court in the Guggenheim case for it would single out the right to redemption and disregard the other rights which the decedent had at the time of her death, in effect substituting a different property interest for the Series G bonds which decedent owned on August 27, 1947.

In the instant case redemption value is a relevant factor in the determination of the value of the bond for estate tax purposes only because it is the price for which the bond could have been redeemed by the decedent prior to maturity. In the Guggenheim case the cash surrender value was relevant not only because it was the price for which the owner could surrender the policy prior to his death but also because the policy had a value for collateral loan purposes equal to its cash surrender value. Despite this double-barreled significance of the cash surrender value, the Supreme Court in the Guggenheim case nevertheless said cost and not cash surrender value was the only amount which really reflected the actual value of the policy. It is thus apparent that the petitioner has even a weaker argument, with regard to the weight which should be given to redemption value as against the weight which should be given to the other elements of value, than did the unsuccessful taxpayer in the Guggenheim case.

Where there is no market price because the property is not transferrable, the Tax Court has to take into account all relevant facts and elements of value. The right of the owner to keep the bonds until maturity, to have them presented for redemption at par within six months following her death even though prior to maturity and to receive 2½% interest on the par value until maturity are elements of value.

The Tax Court was correct when it stated that to determine value by valuing the right of redemption alone would not be proper. This court does not know what weight the Tax Court placed upon the different elements of value making up the bundle of rights which are in-

herent in the nature of Series G bonds. In the absence of an affirmative showing otherwise, we may presume that the Tax Court in arriving at its decision took into consideration all of the various elements of value and gave to each element the value to which it was entitled. Maytag v. Commissioner of Internal Revenue, supra.

█ We cannot say upon the record before us that the finding of value by the Tax Court was clearly erroneous.

The decision of the Tax Court is affirmed.

MAGRUDER, Chief Judge (concurring).

I concur. In prescribing for the valuation of the gross estate of a decedent, § 811 does not speak of "market value", but "the value at the time of his death". If the particular property has an ascertainable fair market value, that value is normally determinative. But a United States Savings Bond, Series G, obviously has a "value", though according to its terms it is non-assignable and non-marketable. Other criteria for valuation must be applied.

Petitioner claims that the sole criterion is the redemption value of the unmatured bond, because under the applicable conditions of the bond that is what the decedent could have got for it at the moment of her death. Even this is not technically accurate, for the prescribed redemption value was not payable except upon one month's notice in writing, and the decedent had not given such notice at the date of her death. Furthermore, the bond had no redemption value during the first six months after the date of its issue; and yet if the holder of such a bond had died within that period, it surely could not have been concluded that the bond had no value for estate tax purposes.

It seems to me, therefore, that the redemption right is not the only feature, or indeed the most important of the "bundle of rights", bearing on the value of the bond. Suppose the bond had contained no provision for redemption prior to maturity. Still, if in 1941 the decedent had paid $1,000 for such a bond, repayable in that amount in twelve years, with interest meanwhile, it may be fair to infer that the decedent thought the bond was worth what she paid for it; that is, that it was presently worth $1,000 to obtain the obligation of the United States to pay her $1,000 in twelve years, with interest at 2½ per cent per annum during that interval.

Of course it is possible that the bond might have depreciated in value between the date of its issue in 1941 and the date of the decedent's death. If, for instance, there were evidence that the trend of interest rates, reflected in quotations on the bond market, were such that an unmatured bond of a perfectly solvent corporation, bearing interest at 2½ per cent, could not at the date of the decedent's death be sold on the bond market except at a price less than par, it might perhaps have been warrantable for the trier of the facts to infer that the decedent's Series G bonds had depreciated in value since the date of their acquisition.

But no such evidence was presented to the Tax Court in this case. All we have is that the decedent paid $1,000 each for the bonds in 1941; that the bonds are payable by the United States at their face value upon maturity, with interest at 2½ per cent meanwhile; indeed that, without waiting for the maturity of the bonds, the legal representative of a deceased owner is entitled to demand redemption of the bonds at par, upon the taking of certain formal steps within six months after the date of the death of the owner. In the circumstances presented in this record, it cannot be concluded that the Tax Court was clearly erroneous in finding that the "value" of the bonds at the date of the decedent's death "was the price she paid for them, or par." The burden was on the taxpayer to convince the Tax Court that the Commissioner's determination was wrong. Not only was the Tax Court's finding not clearly erroneous; on this showing, I don't see how the Tax Court could have

found to the contrary. That is to say, I think a finding by the Tax Court that the Commissioner's determination of value was wrong would have been reversible error for lack of substantial evidence to sustain such a finding.